Nos. 48,058 and 48,067 Consolidated

In the Matter of the Estate of Marcellus M. Murdock, Deceased
PAULA MURDOCK, JANET M. JENNINGS, DAVID COLWELL and VICI
COLWELL MCCOMB, *Appellants,* v. THE FIRST NATIONAL BANK IN
WICHITA, Executor and Trustee, *Appellee.*

(553 P. 2d 876)

Opinion filed July 23, 1976.

*Paul R. Kitch,* of Fleeson, Gooing, Coulson and Kitch, of Wichita, argued the cause, and *Wayne Coulson,* and *Thomas D. Kitch,* of the same firm, were with him on the briefs for appellants Paula Murdock, Janet M. Jennings, David Colwell and Vici Colwell McComb.

*Verne M. Laing,* of Morris, Laing, Evans, Brock and Kennedy, Chartered, of Wichita, was on the briefs for appellant Paula Murdock.

*Jack Scott McInteer,* of Curfman, Brainerd, Harris, Bell, Weigand and Depew, of Wichita, argued the cause, and *Lawrence E. Curfman,* and *Charles W. Harris,* of the same firm, and *Sidney J. Brick,* of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: These two consolidated appeals concern an executor's right to petition the probate court for instructions as to its duties, and its right to rely on those instructions when given. The underlying question is whether an executor who is authorized by the probate court to bring suit on a claim alleged to be due the estate can later be denied an allowance for the reasonable expenses of conducting such litigation.

In No. 48,058, the appellee, The First National Bank in Wichita, sought instructions from the probate court as to what posture it should assume in a suit in the United States District Court in which it, as executor and testamentary trustee, was a named defendant. The instructions given (to be discussed later) were interpreted by the bank to require it to file a cross-claim on behalf of the estate, seeking to recover something over $300,000. An appeal from the order giving instructions was taken to the district court by the appellants, who each have an interest in the residuary estate. From an order there, essentially confirming the probate court's order, the first appeal was taken to this court. In No. 48,067, after a federal jury rendered a verdict against it, the appellee bank sought further instructions as to its course of action—*i. e.,* it wanted to know whether to appeal. The affirmative instructions given on this question were likewise appealed to the district court, and from there to this court, by the same appellants.

These are the third and fourth appeals to reach this court involving the estate of the late Marcellus M. Murdock of Wichita, who died on March 10, 1970. The first was *In re Estate of Murdock,* 213 Kan. 837, 519 P. 2d 108 (*Murdock I*) and the second *Jennings v. Murdock,* 220 Kan. 182, 553 P. 2d 846 (No. 47,888, decided

July 16, 1976, herein *Murdock II*). A detailed background of the Murdock family and its internal struggles may be found in those cases, and is summarized here only insofar as necessary to explain how this case arose.

The decedent, Marcellus Murdock, during his lifetime was the dominant force behind the Wichita Eagle and Beacon, that city's only daily newspaper. He also owned one-third of the paper's stock, and thus held the balance of power between blocks held by his collateral relatives. His great-nephew Harry B. "Britt" Brown, Jr., held a third on one side, while on the other side his niece Katherine Henderson and his great-nephew Victor Delano held a third between them. During his lifetime Marcellus placed half of his stock in an *inter vivos* trust. Upon his death the trust was to be divided into five equal parts, one each for his widow and for each of his four children by a prior marriage (or the offspring of any predeceased child). The beneficiaries were to receive the income, and two years after his death the principal. The other half of Marcellus' stock became part of his estate. Under his will he left his residuary estate under the same trust provisions, except that the trusts were to last fifteen years from his death rather than two as under the *inter vivos* trust. The appellee bank was named trustee under the *inter vivos* trust and executor-trustee under the will.

In *Murdock I* Marcellus' widow Paula claimed one-half of the estate as a surviving spouse who had not consented to the will. This court rejected her claim and held that she was bound by an ante-nuptial agreement giving her a one-fifth or "child's" share of the estate. Supporting Paula's claim in that case were Marcellus' daughter Janet M. Jennings and two grandchildren, David Colwell and Vici Colwell McComb, children of a predeceased daughter. Paula, Janet, David and Vici are the appellants here.

In *Murdock II* the same four individuals sought judicial directions to the bank, as executor and as trustee under both the will and the *inter vivos* trust, requiring it to vote all Eagle stock held by it for their benefit for their nominees for directors of the publishing company. The trial court required the bank to do so unless it could show damage to the trusts would result, thus granting in essence the relief sought. On appeal this court held that this was an unjustified judicial interference with the discretion granted to the trustee under both trust instruments.

In the meantime, however, the result of the trial court's order

was to give to the four appellants voting control of a majority of Marcellus' one-third interest in the publishing company. They combined their votes with the one-third owned by Britt Brown to secure effective control of the newspaper. In both prior suits, as in this one, they were represented by Britt Brown's attorney, Paul R. Kitch. (Although Paula Murdock was and is separately represented, Mr. Kitch has acted as lead counsel throughout.)

Once in control of the newspaper the appellants and Brown proceeded to sell it, through the brokerage efforts of Mr. Kitch. A condition precedent to any sales negotiations was that the purchaser would pay to Mr. Kitch a "finder's fee" of 3% of the gross sales price. In addition, Brown was to receive a ten year employment contract at a substantial increase in salary.

On February 28, 1973, the Wichita Beacon carried a front page story that controlling interest in the paper had been sold to a newspaper chain, Ridder Publications, Inc. Later that day Mr. Kitch delivered a copy of the sales contract to the executor bank. It showed a sales price of $700 per share (subject to certain contingencies) or a total of $42,000,000. Mr. Kitch's fee, to be paid by the purchaser Ridder, was to be $20.25 per share or, if all shares were acquired, $1,215,000. The selling shareholders were to produce an employment contract between the Eagle and Britt Brown guaranteeing him $65,000 per year for ten years, or $650,000. His then current salary was $40,000 per year.

Stockholders who had not already signed were given ten days, or until March 10, 1973, to accept or reject the Ridder contract. The bank, still holding in the estate 10,000 shares of Eagle stock (a one-sixth interest), promptly polled the estate beneficiaries. All agreed to the sale, and with prior probate court approval the bank accepted the Ridder contract on March 8, 1973.

On March 9, 1973, Victor Delano, likewise the owner of 10,000 shares, instituted the federal litigation in which he named as defendants Ridder, the Eagle, and each of the Eagle's officers, directors and stockholders. As a stockholder, the bank was a named defendant. As officers and directors Britt Brown and Paul Kitch were also named as defendants.

Delano's suit basically consisted of two claims. First, he wanted to restrain and enjoin the sale. He claimed a preemptive right to purchase family shares under the articles of incorporation, and also that the personal benefit being reaped by Brown and Kitch violated their fiduciary duties to the stockholders—Brown as presi-

dent and director, Kitch as director and general counsel (he was also assistant secretary). On these grounds he asked that the sale be enjoined, or alternatively that he recover damages in the amount of $20,000,000 from all who had any part in the proposed sale, including the bank as executor.

Secondly, Delano claimed that Kitch's fee and the fruits of Brown's proposed employment contract were, in effect, part of the sales price Ridder was willing to pay for the paper. Kitch and Brown, he alleged, could not personally retain any such part of the sales price because of their fiduciary positions, and should be required to account to the corporation or its shareholders for the fruits of their respective contracts.

It was at this point that the bank first sought instructions from the probate court. It recited in its petition the facts surrounding the impending sale, attached a copy of Delano's federal court complaint, and asked for instructions "as to the position it, as Executor herein, should take in respect to each and every issue in the above-mentioned lawsuit."

The probate court, after a hearing, issued the following instructions:

"1. An executor has the duty and is under a long-established and time-honored obligation to collect, amass and conserve the assets of an estate.

"2. The Executor herein has competent counsel and is entitled to rely on the advise [sic] and opinion of its counsel.

"3. The Executor shall defend the estate against any demand for money judgment against the estate in said Federal Court action.

"4. The Executor shall protect and preserve the validity of and enforce the agreement between Ridder Publications, Inc. and shareholders of Wichita Eagle and Beacon Publishing Company, Inc., dated February 28, 1973, which agreement is the subject of the Order of this Court of March 8, 1973.

"5. The Executor shall take action to bring into the estate whatever share of the sums payable to Paul R. Kitch and Harry B. Brown, Jr., under said agreement to which the estate is legally entitled, provided that such action shall be consistent with the instructions of the Court in paragraph 4 above and shall not jeopardize the validity and enforceability of the aforesaid Agreement of Sale approved by the Court on March 8, 1973 insofar as it involves the actual sale of the stock to Ridder Publications, Inc.

"6. In all of the foregoing matters, the Executor shall not assume a passive posture, but if affirmative action in said Federal Court action becomes advisable, in the opinion of its counsel, it shall take such affirmative action in addition to any defensive action that may be indicated to carry out the foregoing instructions.

"7. This Court has no jurisdiction to determine the issues in the aforesaid Federal Court action, and the Executor should look to its counsel for advice

in the manner and means of carrying out the instructions of this Court contained in this Order."

The executor thereupon filed an answer and cross-claim in the federal action. In its answer it first asserted various defenses to Delano's claim against it for damages (per instruction No. 3), and also, to "protect and preserve the validity" of the sales contract (per instruction No. 4), it opposed Delano's prayer for injunctive relief. The executor's cross-claim was against Kitch and Brown, asserting on behalf of the estate a right to a pro rata share of Kitch's finder's fee and Brown's employment contract. This was in accordance with instruction No. 5, requiring it to "take action to bring into the estate" the estate's rightful share of those contracts, and with No. 6, that "the Executor shall not assume a passive posture," but "shall take such affirmative action" as counsel should advise in order to carry out the court's instructions.

The filing of this pleading in federal court evoked two responses. The first was a letter from one of Mr. Kitch's law partners to the bank, threatening suit by Kitch and Brown if the cross-claim was not withdrawn. The second was a letter from Brown, similarly threatening suit against the bank and also against its individual officers. On March 30, 1973, the bank returned to the probate court seeking supplemental instructions in view of these two letters. On April 5, 1973, after a further hearing, the probate court reaffirmed its instructions of March 23rd.

On April 25, 1973, Paula, Janet, David and Vici appealed to the district court from the order giving instructions, but the matter was not decided there until January 17, 1974.

In the meantime, the federal action was tried on the issue of Delano's request to enjoin the sale. The federal trial court ruled against Delano on his preemptive right of purchase, and found that the contract of sale to Ridder was not vitiated by any breach of a fiduciary relationship by Kitch and Brown. It did not, as we read its findings, determine whether or not there had been any such breach.

This decision was promptly appealed to the United States Court of Appeals for the Tenth Circuit. That court temporarily restrained the stockholders' meeting scheduled for April 30, 1973, where it was proposed to eliminate the preemptive rights provision from the Eagle's charter. On April 27, 1973, after hearing, that court dissolved its restraining order and thus permitted the sale to

Ridder to be completed. One circuit judge concurred with this disposition, finding the equities to be against Delano. He, however, thought that on the closing of the sale Kitch's fee should be paid into court to await "the final determination of the validity of this payment to Kitch and the retainer to Brown as well."

Some eight and one-half months later, on January 17, 1974, the trial court here ruled on the appeal from the probate court's instructions of March 23, 1973, finding:

"One of two matters under consideration by the Court is whether or not the Executor can proceed with a pending action in the United States District Court. After examining the files, considering the evidence and hearing the argument of counsel, the Court does find that the Executor has been advised by its attorneys that it should proceed to amass the assets of the estate. It is the Executor's duty to proceed according to law and to act with the advice of counsel and the Court should not place its judgment prior to a presentation of all evidence. The Executor is therefore acting properly insofar as its stated intentions are concerned and it would be an abuse of discretion for this Court to withdraw judicial proceedings or attempt to halt judicial proceedings without a full hearing on all of the evidence the Executor desires to produce. The ultimate outcome of the action of the Executor may or may not be successful, but that conclusion can only be reached after a full hearing. The Executor is therefore permitted to proceed with litigation in accordance with the instructions of its counsel."

The first appeal (No. 48,058) is from that order.

Thereafter the bank pursued its cross-claim in federal court. Whereas in the matter of the injunction it had been allied with Kitch and Brown (and Mr. Kitch's clients) in opposing Delano, it now became allied with Delano in seeking to recover a share of the fees and compensation paid to Kitch and Brown. Victoria Bloom (a daughter of Marcellus, a stockholder, and a beneficiary under the will) joined the suit seeking similar relief. The case was tried to a jury, which returned a verdict in favor of the defendants Kitch and Brown on August 22, 1974.

After post-trial proceedings in the federal district court the executor, on December 3, 1974, petitioned the probate court for instructions on whether to appeal the adverse federal judgment. At the hearing on the petition it appeared that both Victor Delano, the original plaintiff, and Victoria Bloom had already appealed. The question was whether the executor should join them. The probate judge expressed the view:

". . . I'm of the opinion that when you were authorized to bring this action to begin with—or to join in the action to begin with, it carried the full authority to go as far in that court—in any of the courts as your attorneys

so advised you. And that at a point where your attorneys advised you that you should not take it further, that the—you probably should stop. And I'm still of that same opinion."

After polling the executor's three attorneys and finding that each was of the opinion that an appeal was warranted, the court found:

"So it's the order of this court that they be authorized to carry the appeal, to the extent of Mr. Brown and Mr. Kitch's finder's fee, but not as to that injunctive action against the sale of the newspaper, if that has been appealed."

This order was also appealed to the district court. That court concluded:

"Well, as I had stated previously when this matter was before the Court, insofar as the trial in the United States District Court was concerned the Court is not going to substitute its determination for that of courts in the Federal system; nor is the Court going to take the time to go over the voluminous issues that are involved in litigation.

"But, at least to this point, there certainly has been no finding that counsel for the executor are incompetent; and therefore must enjoy the presumption of competency. And if it is the advice of counsel that the executor proceed with litigation, then it would be impertinent and improper for this Court to interfere with those proceedings. And as they were allowed in the first instance or at least as the executor was allowed to follow the advice of counsel, it would be even more absurd at this point to say that the executor should not follow the advice of counsel in regard to carrying out all necessary and proper means in the Federal District Court, and the executor may proceed as advised by counsel."

The second appeal to this court (No. 48,067) was taken by Mr. Kitch's clients from this order.

In the consolidated appeals appellants argue three points in their brief:

"I. The District Court Did Not Issue Any Instructions to the Bank Concerning the Merits of Its Claim Against Kitch and Brown.

"II. The Bank Is Not Entitled to Rely Upon the Orders Issued by the Trial Court to Justify Any Expenses, Including Attorney Fees, Which it May Hereafter Attempt to Assess Against the Appellants' Trusts or Paula Murdock's Distributive Share.

"III. The Bank Should Have Been Instructed to Follow the Separate Directions of Each Beneficiary and Paula Murdock As to Whether to Sue Kitch and Brown for the Benefit of Their Respective Trust Estates or (in the Case of Paula) Her Distributive Share."

From the points presented it becomes clear that this dispute centers on whether the bank's expenses in carrying on the federal litigation are to be chargeable to the estate (including appellants' interests), or whether the bank was required to carry on that litigation at its own risk despite the instructions given.

Appellant's first two points, it will be observed, assert no error committed by the trial court. They come down to this: The state courts could not conclusively determine the merits of the federal litigation; by "authorizing" the executor to proceed the district court did no more than refuse to enjoin it from acting on the advice of counsel. Therefore, they argue, if counsel's advice turns out to be wrong and the bank ultimately loses the federal suit, its right to be reimbursed for its expenses in that suit will still be an open question.

We think this argument misconceives the effect of the trial court's order. It was to avoid just that sort of situation that the executor petitioned for instructions in the first place—it did not want to act at its peril and have its actions judged only in the light of hindsight.

The jurisdiction of the probate court to instruct an executor or testamentary trustee as to its duties is established by K. S. A. (now 1975 Supp.) 59-301 (3) and (8). Such jurisdiction extends to the "power and authority to direct the executor to institute an action for the purpose of recovering assets belonging to the estate." (*In re Estate of Manweiler,* 185 Kan. 343, 349, 342 P. 2d 730.) See, also, *In re Estate of Slaven,* 177 Kan. 185, 277 P. 2d 580; *Lanning v. Goldsberry,* 171 Kan. 292, 232 P. 2d 611; *Collins v. Richardson,* 171 Kan. 152, 230 P. 2d 1018.

Among the primary duties of an executor is to marshal the assets of the decedent. K. S. A. (now 1975 Supp.) 59-1401. As the foregoing cases and a host of others illustrate, if necessary the executor may bring suit to accomplish this purpose. It may also apply to the probate court for authority before doing so. For example, in *Lanning v. Goldsberry,* supra, it was held that 59-1401 authorized an administrator to bring an action in district court to recover land, where title stood in another but there was evidence that it belonged to the decedent. It was also held, however, that "[i]n such a situation it is appropriate for the administrator, before bringing the action, to advise the probate court of the situation and to procure from the court an order directing or authorizing him to bring the action, since under G. S. 1949, 59-301, the probate court has authority to direct and control the official acts of the administrator." (Syl. 2.)

Going to the core issue, *i. e.,* the executor's attorney fees for the federal litigation, we said in *Murdock I,* Syl. 10:

"An executor has a duty to collect and preserve the assets of a decedent's estate and in so doing he may employ counsel to assist him. The necessity

for the particular legal services and the reasonableness of the amount of compensation to be paid out of the estate are essentially questions of fact for the tribunal authorized to order their allowance."

We find the general rule stated in *Medill v. McIntire*, 136 Kan. 594, 597, 16 P. 2d 952:

"Subject to the general requirements of good faith and reasonable prudence, an executor or administrator is entitled to employ and pay an attorney for advice in reference to the management of the estate, the performance of legal services which the representative cannot himself perform, and the prosecution or defense of actions or suits on behalf of or against the estate, and is entitled to credit in his account or indemnity from the estate for the reasonable charges of counsel and the costs and other expenses of litigation. It is not necessary to entitle the representative to this allowance that he should have been success-ful in the litigation which he undertook, but he is entitled thereto regardless of whether he succeeds or fails, provided the litigation relates to property of, or claims in favor of or against, the estate, was undertaken and conducted in good faith, and with reasonable prudence, for the benefit of the estate, and was reasonably necessary, either because the rights concerned were complicated and conflicting, or because the questions involved in the dispute were such that there might reasonably be an honest and sincere difference of opinion as to the proper solution thereof." (Quoting 24 C. J. 97. See also, 33 C. J. S., *Executors and Administrators*, § 223; K. S. A. 59-1717.)

In this case the executor sought determinations in advance that the federal suit and the appeal to the Tenth Circuit were, in the language of *Medill v. McIntire*, supra, brought "in good faith, and with reasonable prudence, for the benefit of the estate, and . . . reasonably necessary." We take the orders appealed from to hold just that.

True, the district court orders were not worded in the unequivocal language of the probate court instructions of March 23, 1973. But if the district court had found bad faith, or the negative of any one of the other elements listed, it surely would not have authorized the executor to proceed. Or if it had thought the petition for in-structions improper or premature, it could have declined to issue any instructions at all. Instead, the court found in each instance that the executor had competent counsel and, in determining the proper steps to be taken to amass the assets of the estate, it was entitled to rely on counsel's advice—knowing in each case what that advice was.

It is also true, as appellants assert, that in a sense the courts below expressed no opinion on the merits of the federal litigation. That is to say, neither the probate nor the district judge felt called upon to decide whether Kitch or Brown should be called upon

to disgorge any profits—that was an issue within the exclusive jurisdiction of the federal courts. But such a determination was irrelevant to the issues before the state courts. What the courts below were called upon to decide was whether the claim against Kitch and Brown in the federal case was worth pursuing on behalf of the estate. Evidence was presented on this issue (including expert legal testimony) and the suit and appeal were authorized.

As previously noted, in their first two points appellants do not argue that the instructions to the executor were erroneous, but only that they should be given no effect in the future. We disagree. Judicial authority to direct a fiduciary in the conduct of his duties is conferred by statute. When that authority is exercised the resulting decree carries the same weight as any other judicial act. Where the court authorizes an executor to institute an action, the authorization must carry with it a finding that the suit is in good faith, prudent, for the benefit of the estate, and reasonably necessary. The court is authorized to give instructions, and the fiduciary is entitled to act upon them. Otherwise the court's right to control would be meaningless.

Appellant's third point—their only claim of error—is that the executor should not have been permitted to pursue the claim against Kitch and Brown over their objection. Their claim to the right to impose their wishes on the bank as executor-trustee was largely disposed of in *Murdock II*. There this court held that the terms of the will, and especially the spendthrift trust provisions, vested discretion in the administration of the trust in the fiduciary, and not in the beneficiaries.

We also pointed out the bank's responsibility to contingent beneficiaries. Janet, David and Vici contend that they, as income beneficiaries, can release the bank from any claims by contingent remaindermen. Janet bases her authority on a power of appointment given to her under the will. David and Vici base theirs on the fact that the remaindermen of their trusts would in all probability be their children. The only authority cited for this proposition is *Restatement of Trusts*, 2d, § 216 (*h*), which says that a beneficiary with a general power of appointment may "consent to a breach of trust." While this might cover Janet's situation, it has no applicability to that of David and Vici. But more importantly, we think it would be incongruous with all existing law relating to a fiduciary's duties to say that, because he can be released from personal liability, a fiduciary must breach his trust on demand

Paula's claimed right to demand that the executor withdraw its suit is based on the theory that she was at some time the owner of specified shares of Eagle stock, or was at least entitled to their proceeds. This theory misconceives her status. *Murdock 1* established her right to one-fifth of the residuary estate, based on her antenuptial *contract* with the decedent. She was thus a *creditor* of the estate, even though the value of her claim was to be determined as if she had been a residuary legatee. As a general creditor she had no interest in any particular assets of the estate, and certainly had no right to tell the executor whether it should sue on or abandon the claim against Kitch and Brown.

In short, whether the executor should have brought suit and whether it should have appealed were proper questions to be submitted to the courts for instructions. Those instructions were given, authorizing both actions, based upon counsel's evaluation of the probabilities of success as weighed against the potential cost. We find no error in the instructions, and the judgment is affirmed.

APPROVED BY THE COURT.