Barbara L. FOGARTY, Administrator
of the Estate of John Joseph
Fogarty, Deceased, Plaintiff,

v.

CAMPBELL 66 EXPRESS, INC., a corporation; Protective Insurance Company, an insurance corporation; Jerry B. Milligan; and Cheryl L. Budnik, Defendants.

Barbara L. FOGARTY, Widow, Next of
Kin and Heir at Law of John Joseph
Fogarty, Deceased, Plaintiff,

v.

CAMPBELL 66 EXPRESS, INC., a corporation; Protective Insurance Company, an insurance corporation; Jerry B. Milligan; and Cheryl L. Budnik, Defendants.

Civ. A. Nos. 85–2117, 85–2118.

United States District Court,
D. Kansas.

July 23, 1986.

David M. Remley, Remley, Heiserman & Willems, Anamosa, Iowa, John E. Shamberg, Shamberg, Johnson, Bergman & Goldman, Chartered, Shawnee Mission, Kan., for plaintiff.

Barton Brown, Jeffrey L. Lauersdorf, Wallace, Saunders, Austin Brown & Enochs, Overland Park, Kan., for defendants Campbell 66, Protective Ins., and Budnik.

Kenneth J. Reilly, Boddington & Brown, Kansas City, Kan., for defendant Milligan.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on defendants' motions for partial summary judgment and on plaintiff's motion to strike "Defendants' Supplement to Designation of Experts."

### I. *Motions for Summary Judgment.*

Entry of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* — U.S. —, —, 106 S.Ct. 2548, 2552, 81 L.Ed.2d 265 (1986). In considering such a motion, we must examine all evi-

dence in the light most favorable to the opposing party. *Prochaska v. Marcoux,* 632 F.2d 848, 850 (10th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Where differing inferences could reasonably be drawn from conflicting affidavits and depositions, summary judgment should be denied. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where only partial summary judgment is appropriate, we may enter an order to that effect. Fed.R.Civ.P. 56(d). In any event, the Tenth Circuit requires a moving party to demonstrate his entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985).

The facts material to the resolution of defendants' motions for partial summary judgment, construed most favorably to plaintiff, are as follows. On December 16, 1983, at 10:20 p.m., defendant Cheryl L. Budnik ["Budnik"] was driving a tractor-trailer rig in an easterly direction along U.S. Highway 166 in Labette County, Kansas. At the same time, the late John Joseph Fogarty ["decedent"] was driving a tractor-trailer in a northerly direction along U.S. Highway 59. The two vehicles collided at the intersection of those two highways. Prior to the collision, decedent's truck left fifty-six feet of skid marks. After the collision, both vehicles left the roadway, with decedent's truck eventually breaking through a six-foot concrete wall. Budnik was injured in the collision, but did survive. Decedent was killed when the load of steel he was hauling penetrated his cab, crushing his head and thorax. According to his death certificate, decedent's death was "immediate."

The truck driven by Budnik was owned by defendant Jerry B. Milligan ["Milligan"] and was leased to defendant Campbell 66 Express, Inc. ["Campbell 66"]. Plaintiff Barbara L. Fogarty is the widow and legal heir of decedent, as well as the administratrix of his estate. Plaintiff was also the co-owner (along with decedent) of the truck decedent was driving.

In response to decedent's death, plaintiff filed both a survival action (No. 85–2117) and a wrongful death action (No. 85–2118) against the defendants. Plaintiff alleges that Budnik was negligent in failing to obey a stop sign, in operating her vehicle while fatigued, and in traveling at an excessive rate of speed. Plaintiff seeks to recover both actual and punitive damages against Budnik. Milligan and Campbell 66 have stipulated that, at all material times, Budnik was operating her vehicle within the scope of her authority as an agent of both Milligan and Campbell 66. They thus concede that they would be vicariously liable for any actual damages attributable to Budnik's fault. They do *not* concede vicarious liability for punitive damages. Plaintiff also alleges independent negligence on the part of Campbell 66 in failing to warn Budnik that the intersection in question was unsafe. Again, plaintiff seeks to recover both actual and punitive damages for Campbell 66's allegedly negligent conduct.

Traffic approaching the intersection from Highway 166 would have encountered a stop sign. Located some 1,409 and 746 feet west of that stop sign, and apparently clearly visible to vehicular traffic, were two separate "stop ahead" signs. Budnik testified by way of deposition that, for various reasons, she failed to see those signs on the night in question. Being unfamiliar with the intersection, and assuming that the U.S. Highway on which she was traveling would have the right-of-way, she failed to stop before entering the intersection. By the time she realized her mistake, the collision had occurred.

The unusual factual circumstances of this case present a number of legal issues. First, is plaintiff entitled to recover for decedent's emotional distress occurring *prior* to the collision between the two vehicles? A second, and quite distinct, question concerns her entitlement to recover for decedent's *post*-impact emotional distress. (Plaintiff has essentially conceded that decedent's "immediate" death rules out any recovery for *physical* pain and suffering.) A third issue raised by defendants involves

the proper action in which to recover for damages to the tractor-trailer co-owned by plaintiff and decedent—i.e., the survival action or the wrongful death action. Whether Campbell 66 may be held independently liable for decedent's death constitutes the fourth issue. And finally, defendants seek to avoid all liability for punitive damages—both directly and indirectly. We will address each of these issues in turn.

### A. Pre-Impact Emotional Distress.

In *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214, 1219–20 (1983), the Kansas Supreme Court summarized the current law concerning recovery for emotional distress:

> It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it is *accompanied by* or *results in* physical injury to the plaintiff. This rule, however, does not apply where the injurious conduct is willful or *wanton*, or the defendant acts with intent to injure.

(Emphasis added; citations omitted.) Although the evidence produced by plaintiff fails to support a finding that Budnik's actions were either willful or intentional, we cannot say, beyond a reasonable doubt, that those acts were not wanton. The Kansas Supreme Court has defined that term as follows:

> Wanton conduct is distinguished from a mere lack of due care by the fact that the actor realized the imminence of injury to others from his acts and refrained from taking steps to prevent the injury. This reckless disregard or complete indifference rises substantially beyond mere negligence.

*Bowman v. Doherty*, 235 Kan. 870, 876, 686 P.2d 112, 118 (1984). The uncontroverted evidence shows that Budnik had ample opportunity to see the two "stop ahead" signs, as well as the eventual stop sign. Yet, by her own testimony, she was traveling at forty-two to forty-three miles per hour as she entered the intersection. Given the number and placement of warning signs, the jury might well discredit Budnik's testimony that she failed to see them. Had Budnik actually seen the signs but nonetheless proceeded through the intersection without stopping, she should have realized that any traffic traveling through the intersection along Highway 59 would be in imminent danger of injury. Her failure to come to a stop could thus have constituted wanton conduct.

Whether Budnik's actions were indeed wanton is a factual question that remains for resolution at trial. In ruling on these motions for partial summary judgment, we are of course giving every benefit of the doubt to plaintiff. After hearing plaintiff's evidence at trial, however, we may well determine that a directed verdict on this issue would be in order.

Because it is entirely possible that either the jury or the court will find that Budnik's actions were not wanton, we proceed to consider whether plaintiff may recover for decedent's *negligently* induced, pre-impact emotional distress. In making this determination, we return to the first of the two sentences quoted from *Hoard, supra*. Plaintiff has presented no evidence that decedent's emotional distress "resulted in" physical injury. For example, plaintiff does not claim that decedent suffered a heart attack prior to his death. Rather, plaintiff intends to seek recovery for pre-impact emotional distress on the ground that such distress was "accompanied by" physical injury—in this case, the subsequent crushing of decedent's head and thorax. In other words, plaintiff construes "accompanied by" to include instances in which physical injury occurs *after*, and yet not as a result of emotional distress.

The Kansas case law does not explicitly support plaintiff's interpretation. Although the rule that there can be no recovery for emotional distress "unless it results in or is accompanied by physical injury" has regularly appeared in the Kansas cases since at least 1916, *see Whitsel v. Watts*, 98 Kan. 508, 509, 159 P. 401 (1916), we have found no Kansas decision involving *subsequent* physical injury not actually *caused*

by the emotional distress. All the cases appear to involve either prior or contemporaneous physical injury. *See Connell v. Norton Coca Cola Bottling Co.*, 187 Kan. 393, 397, 357 P.2d 804, 807 (1960) ("psychological reactions" and "physical distress" as a result of drinking from a bottle containing a decomposed centipede were "inseparable.").

We thus deem it important that in *Clemm v. Atchison, Topeka & Santa Fe Railway Co.*, 126 Kan. 181, 184, 268 P. 103, 105 (1928), the court prefaced the usual rule with this statement: "Where the mental suffering is an element of physical pain, *or the natural and proximate result of physical injury*, it forms the basis of recovery." (Emphasis added.) Apparently, then, physical injury "accompanies" emotional distress only if (1) the two intermingle or (2) the physical injury actually *causes* emotional distress. Clearly, *subsequent* physical injury could not cause *prior* emotional distress.

The quoted rule is thus not so broad as plaintiff suggests. Neither, however, does the rule actually bar the result sought by plaintiff. It simply fails to address the issue. We must thus look elsewhere to determine whether a decedent's estate may recover for negligently induced, preimpact emotional distress not itself resulting in physical injury. A search reveals no Kansas authority directly on point—or even directly analogous. We must thus predict how the Kansas Supreme Court would answer this question.

This precise issue has been addressed, sometimes implicitly, by courts applying the law of seven sister states plus the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.* ["FELA"]. The law of five states and the FELA appear to support plaintiff's position that recovery for negligently induced, pre-impact emotional distress not itself resulting in physical injury should be allowed. *See In Re Air Crash Disaster Near New Orleans, Louisiana*, 789 F.2d 1092, 1098 (5th Cir.1986) (Louisiana law); *Pregeant v. Pan American World Airways, Inc.*, 762 F.2d 1245, 1247 (5th Cir.1985) (Louisiana law); *Haley v. Pan American World Airways*, 746 F.2d 311, 315 (5th Cir.1984) (Louisiana law); *Feldman v. Allegheny Airlines, Inc.*, 382 F.Supp. 1271, 1301 (D.Conn.1974); *Anderson v. Rowe*, 425 N.Y.S.2d 180, 73 A.D.2d 1030 (1980); *Shu-Tao Lin v. McDonnell Douglas Corp.*, 574 F.Supp. 1407, 1416 (S.D.N.Y.1983), *affirmed as to this issue*, 742 F.2d 45, 53 (2d Cir.1984); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 206 (2d Cir.1984) (New York law); *Malacynski v. McDonnell Douglas Corp.*, 565 F.Supp. 105, 106 (S.D.N.Y.1983); *Platt v. McDonnell Douglas Corp.*, 554 F.Supp. 360, 363–64 (E.D.Mich.1983); *Solomon v. Warren*, 540 F.2d 777, 793 (5th Cir.1976) (Florida law), *cert. denied sub nom. Warren v. Serody*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1978); *Port Terminal Railroad Assoc. v. Sweet*, 640 S.W.2d 362 (Tex. Civ.App.1982) (applying FELA), *affirmed*, 653 S.W.2d 291 (Tex.1983); *Kozar v. Chesapeake & Ohio Railway Co.*, 320 F.Supp. 335, 365–66 (W.D.Mich.1970) (applying FELA), *modified on other grounds*, 449 F.2d 1238 (6th Cir.1971). Two states have adopted the contrary view. *See Nye v. Pennsylvania Department of Transportation*, 331 Pa.Sup. 209, 480 A.2d 318 (1984); *In Re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 507 F.Supp. 21, 23 (N.D.Ill.1980).

After examining certain long-standing policy considerations, the analysis in the opinions applying the law of other jurisdictions, and, of course, the general tenor of related Kansas law, we predict that the Kansas Supreme Court would join Illinois and Pennsylvania in denying recovery for pre-impact emotional distress in the circumstances here presented.

The Kansas rule regarding recovery for emotional distress, although stated somewhat differently, appears functionally equivalent to that enunciated in section 436A of the *Restatement (Second) of Torts*. That section reads as follows:

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional distur-

bance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

The Restatement rule is especially important because Comment b thereunder provides the following three policy reasons for such a rule:

One is that emotional disturbance which is not so severe and serious as to have physical consequences is normally in the realm of the trivial, and so falls within the maxim that the law does not concern itself with trifles. It is likely to be so temporary, so evanescent, and so relatively harmless and unimportant, that the task of compensating for it would unduly burden the courts and the defendants. The second is that in the absence of the guarantee of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely upon the subjective testimony of the plaintiff; and that to allow recovery for it might open too wide a door for false claimants who have suffered no real harm at all. The third is that where the defendant has been merely negligent, without any element of intent to do harm, his fault is not so great that he should be required to make good a purely mental disturbance.

See also W. Prosser, Handbook of the Law of Torts § 54, p. 328 (1971).

Admittedly, these reasons were developed many years ago and, as further explained below, one or more of them may now be obsolete. Nonetheless, we doubt that the Kansas Supreme Court would adopt the rule urged by plaintiff unless convinced that these reasons were no longer valid. Our analysis is thus greatly hampered by the fact that the courts allowing recovery in the circumstances here presented generally avoid these issues altogether, or, where some mention is made of them, the court's analysis is open to serious question. A jurisdiction-by-jurisdiction examination of the decisions permitting recovery will clarify this point.

Preliminarily, however, we note that decisions applying the law of two jurisdictions are irrelevant to our analysis for quite another reason. In predicting that the Louisiana courts would permit recovery for pre-impact emotional distress, the Fifth Circuit relied upon the "broad compensatory principle" expressed in the following provision of the Louisiana Civil Code:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

La.Civ.Code Ann. art. 2315 (West Supp. 1984), quoted in Haley, 746 F.2d at 313 n. 3. Indeed, the Haley court noted that this provision would appear to permit recovery for negligently induced fright, even in the total absence of physical injury. 746 F.2d at 314. The latter conclusion is clearly contrary to the acknowledged Kansas rule.

Admittedly, section 18 of the Kansas Constitution's Bill of Rights does bear some resemblance to the Louisiana Code provision relied upon in Haley. That section reads as follows:

All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay.

This section provides no support, however, for plaintiff's position. In Schmeck v. City of Shawnee, 231 Kan. 588, 594, 647 P.2d 1263, 1267 (1982), the Kansas Supreme Court expressly rejected a similar claim that this provision supported the recognition of a legal remedy for emotional distress suffered by a parent upon learning of an adult child's injury. As the court noted:

This section, however, does not create rights of action; it means only that "for such wrongs that are recognized by the law of the land" the courts of this state shall be open and afford a remedy. The claim here asserted by the plaintiff is not one that is recognized by the laws of this state. The quoted section from the Bill of Rights does not create a right of action where none exists.

Before this provision would come into play, then, it must first be established that Kansas does recognize a cause of action for the damages alleged by plaintiff. The reasoning in *Haley* (and in the other decisions construing Louisiana law in accordance therewith) is thus irrelevant to the question of whether the Kansas Supreme Court would permit plaintiff herein to recover for decedent's pre-impact emotional distress.

Similarly, *Kozar* makes clear that the FELA presents another special case. In permitting an FELA plaintiff to recover for his pre-impact fright, the *Kozar* court placed heavy reliance on the Supreme Court's "special solicitude to insure that all factual issues in a Federal Employer's Liability Act case are resolved by the jury." 320 F.Supp. at 366. The Kansas Supreme Court has shown no such solicitude in its emotional distress decisions, but rather has approved the trial courts' granting of summary judgment where no exception to the general rule barring recovery for negligent infliction of emotional distress has been shown to exist. *See, e.g., Hoard*, 233 Kan. at 279, 662 P.2d at 1223. Again, then, we can place no reliance on those decisions permitting recovery for pre-impact emotional distress under the FELA.

The only indication that the courts of Connecticut would permit recovery for pre-impact emotional distress comes from the following isolated sentence: "Nor was any evidence presented from which the Court could fairly infer that the decedent was aware of the proximity of disaster in advance of the actual impact." *Feldman*, 382 F.Supp. at 1301. At best, this sentence *implies* that the Connecticut courts would permit recovery in the circumstances here presented. Yet there is no indication that that issue was even raised by the parties. In any event, the *Feldman* opinion contains absolutely no discussion of the three factors cited in the Restatement Comment quoted above. Accordingly, we place no reliance on the *Feldman* dicta.

Although one could cite several New York decisions appearing to support recovery for pre-impact emotional distress, the analysis undergirding those decisions is little stronger than that discussed in connection with Connecticut law. The only statement on this issue by a New York *state* court came in *Anderson*, where an intermediate appellate court issued a one-paragraph memorandum opinion affirming the trial court. As with the Connecticut decision in *Feldman*, *Anderson* contained only one relevant sentence: "Nor was the plaintiff able to show evidence from which one might imply that the decedents were aware of the danger and suffered from pre-impact terror." Again, such a statement no more than *implies* that recovery would be allowed if the proper evidence were available. Citing only *Anderson*, a New York Federal District Court held that such recovery would be allowed. *See Malacynski*, 565 F.Supp. at 106. In *Shu-Tao Lin*, that same court cited only *Malacynski* and *Anderson* in again permitting recovery for such injury. No independent analysis was presented. *See* 574 F.Supp. at 1416. In affirming the district court's *Shu-Tao Lin* decision, the Second Circuit simply relied on the trial court's rather cursory analysis. 742 F.2d at 53. The final decision applying New York law to the issue here presented simply *assumed* that pre-impact emotional distress is compensable, and then concluded that no evidence of such distress had been presented. *Shatkin*, 727 F.2d at 206.

If every repetition of a legal rule, no matter how poorly reasoned, makes that rule more solidly imbedded in a state's jurisprudence, then one can safely say that New York would permit recovery for pre-impact emotional distress. Nonetheless, we cannot close our eyes to the fact that the New York federal courts have apparently created this rule from an implication contained in a single sentence of dicta in a one-paragraph memorandum opinion by an intermediate appellate state court. No independent reasoning has been provided. Recognizing the weaknesses inherent in such a process, we doubt that the Kansas Supreme Court would place serious reliance on the apparent New York rule.

In *Platt,* a Michigan Federal District Court purported to answer the precise question at issue here. In a less than emphatic conclusion, the court stated: "We are not persuaded that common law in Michigan does not allow recovery for pre-impact fright and terror." 554 F.Supp. at 363. In attempting to explain why it reached that conclusion, however, the *Platt* court seemed to lose track of the issue. Noting that "[l]ong established Michigan case law supports the notion that recovery may be sought and awarded for not only 'bodily pain, but mental suffering, anxiety, suspense and fright which might be treated as elements of the injury ...'," *id.* (quoting *Sherwood v. Railroad Co.,* 82 Mich. 374, 383, 46 N.W. 773 (1890)), the court went on to quote from the more recent decision in *Taylor v. Michigan,* 45 Mich.App. 453, 206 N.W.2d 815 (1973). However, the passage quoted above is entirely consistent with the Kansas rule permitting recovery for emotional distress where such distress *accompanies* physical injury. And the *Taylor* decision cited in *Platt* has nothing to do with *pre*-impact emotional distress. Rather, the *Taylor* court simply concluded that "[t]he evidence indicates that there was conscious moving and cries for help *after* the explosion and before death." (Emphasis added.) Thus, despite the *Platt* court's statement concerning pre-impact emotional distress, none of the authorities cited by that court would support such a rule. Again, then, the total lack of relevant analysis in the *Platt* decision strongly suggests that the Kansas Supreme Court would place little weight on this statement of Michigan law.

Only when we come to an examination of Florida law do we find a court making any pretense of addressing the Restatement factors underlying the rule against recovery for emotional distress. In particular, the Fifth Circuit's *Solomon* decision addresses the second of those two factors, *i.e.,* that resulting bodily harm serves as a "guarantee of genuineness" as to claims for emotional distress. The *Solomon* majority opinion contains the following relevant analysis:

> While in the garden variety of claims under survival statutes, including the Florida Statute—fatal injuries sustained in automobile accidents and the like—the usual sequence is impact followed by pain and suffering, we are unable to discern any reason based on either law or logic for rejecting a claim because in this case as to at least part of the suffering, this sequence was reversed. We will not disallow the claims for this item of damages on that ground.

540 F.2d at 793.

Although the *Solomon* majority could apparently think of no logical reason for not reversing the sequence, a dissent by Judge Gee offered the following such reason:

> The majority professes that it has not departed from the impact rule but has only reversed a sequence to allow recovery when the impact *follows* the fear, as well as when the impact *precedes* the mental suffering. But to reverse the sequence is to abandon the rationale of the impact rule: any compensated mental pain and suffering must be caused by a physical impact. The airplane crash and the Levins' resulting deaths were not the "but for" cause of whatever anxiety they may have suffered prior to their deaths. Their prior fears would not have been diminished had the plane leveled off at the last moment and avoided disaster altogether. This is because the Levins' anxiety for their own safety and their children's future well being was *caused* by the anticipation of death, not by the actual crash that presumably killed them. It is not enough that some impact accompany the mental suffering; the impact must cause the fears if they are to be compensable. Only then can courts measure mental duress by some means other than sheer speculation.

*Solomon,* 540 F.2d at 796–97 (Gee, J., dissenting) (emphasis in original).

Judge Gee's emphasis on causation is particularly relevant to a determination of Kansas law. Some states have construed

the "impact rule" so broadly as to permit recovery for emotional distress after *any* physical touching, "no matter how slight." 38 Am.Jur.2d, *Fright, Shock, and Mental Disturbance* § 25 (1968). In those jurisdictions, a focus on causation would perhaps be inappropriate. Clearly, a slight impact seldom "causes" emotional distress. Insofar, then, as a jurisdiction might follow that rather lax standard, Judge Gee's argument is somewhat unrealistic. Kansas, however, has apparently never adopted such a broad impact rule. Indeed, the term "impact rule" has never found favor in the opinions of the Kansas Supreme Court. Rather, that court adheres to the standards set forth at the beginning of this discussion—including the requirement that compensable emotional distress be the "natural and proximate result of physical injury." *Clemm*, 126 Kan. at 184, 268 P. 103. Clearly, such a standard is consistent with Judge Gee's conclusion that "the impact must *cause* the fears if they are to be compensable." (Emphasis added.) Thus, at least as the issue might arise in Kansas, Judge Gee's dissent would appear better reasoned than the rather cursory majority opinion.

As noted earlier, two jurisdictions would deny recovery for pre-impact emotional distress under the circumstances here presented. As in *Solomon*, the Illinois Federal District Court in *In Re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, considered the issue of pre-impact emotional distress in the context of an airplane crash. The Illinois court stated, in part, as follows:

Since, under Illinois law, an individual can recover for emotional distress or suffering only when the distress is caused by a physical injury, plaintiff cannot recover for the fright and terror her daughter may have experienced in anticipation of physical injury.

The plaintiff argues that this case is distinguishable from Illinois cases which have denied claims for pre-impact suffering because in this case, unlike other cases, physical injury did in fact occur. She asks that we merely extend the time

for recovery of pain and suffering damages to include the period immediately prior to an inevitable physical injury. She notes that a similar argument was accepted by the Court of Appeals for the Fifth Circuit in *Solomon v. Warren*, 540 F.2d 777 (5th Cir.1977).

After summarizing *Solomon*'s facts, and then quoting from both the majority and dissenting opinions in that case, the Illinois court concluded:

No Illinois court has directly discussed this issue. Given the Illinois courts' previous refusal to recognize claims for damages based on the plaintiff's fear or apprehension of danger, however, we believe that at present Illinois would not allow the plaintiff to maintain a claim for her daughter's alleged fright and terror prior to the crash.

507 F.Supp. at 24.

The other jurisdiction that would deny recovery for pre-impact emotional distress in the circumstances here presented is Pennsylvania. In *Nye*, the Pennsylvania Superior Court declined to decide whether recovery for pre-impact emotional distress would be permitted in Pennsylvania. Assuming that such recovery would *sometimes* be permitted, however, the court held that "the estate may recover damages for 'pre-impact fright' only upon proof that [the plaintiff] suffered physical harm prior to the impact as a result of her fear of impending death." In other words, Pennsylvania law is in agreement with Kansas law on the proposition that one may recover for pre-impact emotional distress where such distress results in physical injury. *See Hoard*, 233 Kan. at 274, 662 P.2d at 1219–20. As noted earlier, plaintiff has no evidence that decedent's emotional distress resulted in physical injury prior to the impact of the two vehicles. Thus, Pennsylvania law would also foreclose plaintiff's recovery for decedent's pre-impact emotional distress.

Having canvassed the relevant decisions from other jurisdictions, we have found no court that has cogently explained why the

Restatement factors ought now to be discounted. In Kansas, where the impact rule has been rather strictly construed, this lack of contrary analysis is especially important. Moreover, our conclusion that Kansas law would not permit plaintiff to recover for decedent's pre-impact emotional distress is further buttressed by the Kansas Supreme Court's stringent attitude toward claims for *intentional* infliction of emotional distress (the tort of outrage).

One of the threshold requirements for any outrage claim is a finding by the court that "the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Roberts v. Saylor*, 230 Kan. 289, 292, 637 P.2d 1175, 1179 (1981). To be a sufficient basis for an outrage claim, a defendant's conduct "must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Id.*, 230 Kan. at 293, 637 P.2d at 1179. To permit recovery for *negligent* infliction of emotional distress without proof of either causative or resulting physical injury would fly in the face of this restrictive scope of a claim for *intentional* infliction of emotional distress. *See also Hopkins v. State*, 237 Kan. 601, 613, 702 P.2d 311, 320 (1985) (Kansas Supreme Court has never allowed recovery for emotional distress caused by direct injury to *property*—even "where the tort is committed under circumstances of positive malice or ill will which might reasonably be expected to lead to considerable mental disturbance to the plaintiff.").

Insofar, then, as plaintiff may be able to prove only negligence on the part of Budnik, we will be forced to direct a verdict in favor of defendants on the issue of plaintiff's right to recover damages for decedent's pre-impact emotional distress. Because the issue of whether Budnik's conduct was indeed wanton still remains for determination, however, we must now deny defendants' motion for summary judgment on this issue.

Our conclusion that the Kansas Supreme Court would refuse to permit recovery for negligently induced, pre-impact emotional distress not itself resulting in physical injury should not be read as an endorsement of the current legal doctrine in this area. A review of the case law in this and other jurisdictions reveals considerable disagreement, as well as more than a little judicial practice of medicine. By this we mean that the general rule against recovery for emotional distress (and, indeed, most of the exceptions thereto) was developed before medical science had advanced to its present state. Because earlier medical experts were less able to diagnose purely mental or emotional distress (or were at least so perceived by the courts of that day), courts attempted to sort out "fraudulent" claims by imposing the rather arbitrary "impact rule." Today, it is not at all clear that a physical impact is more likely to result in genuine emotional distress than are many non-impact situations. For instance, the fear of a fatal collision seems far more likely to create intense emotional distress than is a merely incidental physical contact. The effect of the rule, however, is to bar a truly distressed (but non-impacted) plaintiff from attempting to convince a jury that his complaints are genuine. With the advances in modern medicine, the potential for fraud in such an endeavor would seem to fall within an acceptable level of tolerance. *See Prosser* § 54, p. 328.

Moreover, the rule allowing recovery for emotional distress that "results in" physical injury was developed in an era when that possibility seemed entirely reasonable. A more recent commentator has noted, however, that "seriously deleterious physical consequences are extremely unlikely to result from a single, short-term emotional experience, even of a violent nature, except where there is a predisposition to such a result." *Annot.*, 64 A.L.R.2d 100, 105 (1959). Thus, in forcing a plaintiff to prove resulting physical injury before allowing recovery for his emotional distress, courts may be asking him to do the impossible. This can only lead to injustice, creative fact finding, or both.

In any event, one can concede that a negligent defendant should be liable for any physical injury that actually does result from a plaintiff's emotional distress, and yet *not* accept the current rule as to when recovery for the emotional distress itself should be allowed. Under the current rule, of course, a plaintiff who experiences no physical impact may recover for his emotional distress only if it results in physical injury. A plaintiff who suffers solely emotional distress has no right to recover—even if his emotional distress is of far greater severity than that suffered by a physically injured plaintiff. Although the absence of physical injury may diminish the credibility of a plaintiff's emotional distress claim, that should act as no bar to his recovery. Given the plaintiff's burden of proving such a claim, as well as the recent advances in diagnostic techniques, a rule denying all recovery to such a genuinely distressed plaintiff seems both illogical and unenlightened.

Perhaps a better solution would be to discard most of the rules restricting recovery for emotional distress. A negligent defendant should be liable for any provable emotional distress he or she causes a plaintiff—regardless of whether physical injury results. Although never so expressed, a desire to move toward such a rule may explain why federal courts in other jurisdictions have strained to permit recovery for pre-impact emotional distress. To date, however, no court has been so bold as to announce the rule in the direct, simple fashion suggested herein.

Even under such a modern rule, of course, a plaintiff would still have to present some competent evidence before being able to recover for purely emotional distress. If no such evidence were presented, the court could direct a verdict in defendant's favor. In the instant case, plaintiff does have such evidence. The accident report states that decedent's vehicle left pre-impact skid marks some fifty-six feet long. One could surely infer from those marks that decedent knew of the impending crash and took drastic action to avoid it. Based on human nature, a jury could

certainly find that decedent suffered emotional distress during that braking period, as well as during the preceding reaction time between his recognition of the danger and his application of the brakes.

Under a more modern legal construct, then, it would seem logical to permit plaintiff's claim for pre-impact emotional distress to go to the jury—even if she does fail to prove that Budnik's conduct was wanton. At the present time, however, we have no indication that the Kansas Supreme Court is prepared to jettison its recently reaffirmed rules restricting recovery for emotional distress. So long as those rules remain in force, their internal logic requires that we deny plaintiff's claim for negligently induced, pre-impact emotional distress not itself resulting in physical injury. If those rules are to be discarded, such an announcement should properly come from the Kansas Supreme Court.

B. *Post-Impact Emotional Distress.*

Under Kansas law, "pain and suffering must be realized by the injured party before it is compensable." *Nichols v. Marshall*, 486 F.2d 791, 793 (10th Cir.1973). *See also Pape v. Kansas Power and Light Co.*, 231 Kan. 441, 448, 647 P.2d 320, 325 (1982) (applying said rule). As noted above, decedent's death certificate indicates that his death was "immediate." Defendants thus request entry of summary judgment in their favor on plaintiff's claim for decedent's post-impact emotional distress.

We do not read so much into decedent's death certificate as defendants apparently do. Although the preparer of that certificate stated that the "interval between onset and death" was "immediate," we see no indication as to what the preparer meant by the term "onset." Was that when the two trucks collided, or was it when the steel came through the back of decedent's cab? The latter seems more likely. Plaintiff suggests that the steel did not come through the cab (and thus that decedent did not die) until decedent's truck broke through the six-foot concrete wall. If the

preparer of decedent's death certificate meant onset to be the time when the steel came through the back of decedent's cab, and if it is also true that this event did not occur until *after* the two trucks collided, it is possible that decedent was conscious during the interval between the collision of the two trucks and decedent's death.

Although plaintiff has no direct evidence that decedent survived the initial impact with Budnik's vehicle, the Kansas Highway Patrol diagrams submitted in conjunction with plaintiff's memorandum in opposition to the summary judgment motions do provide inferential support for plaintiff's theory. One diagram indicates that Budnik's truck was turning away from decedent's truck at the time the collision occurred. In effect, decedent's truck appeared to give Budnik's only a glancing blow. Budnik clearly survived this collision. A jury could thus infer that decedent did likewise—suffering the fatal blow only after his truck broke through the six-foot concrete wall.

Because we are not convinced beyond a reasonable doubt that decedent died immediately upon the impact between the two vehicles, we will deny defendants' motion for summary judgment on plaintiff's claim for decedent's post-impact emotional distress. As with the question of whether Budnik's conduct was wanton, however, this is an issue upon which plaintiff bears the burden of proof—and as to which a directed verdict may eventually be in order.

### C. *Personal Property Damages.*

■ Plaintiff's prayer in her survival action (No. 85–2117) includes an amount representing damage to the tractor-trailer driven by decedent at the time of his death. Defendants contend that, because the truck was owned by both decedent and plaintiff, any claim for its damage must be brought by plaintiff as part of the wrongful death action (No. 85–2118). If we correctly understand defendants' argument, it relies on the following two points. First, plaintiff is apparently unable to prove that the truck was damaged *before* decedent died. And second, the survival statute grants decedent's administratrix (here, the plaintiff) a

right to recover only for damage to decedent's personal property occurring *prior* to decedent's death. Even assuming the truth of each of these two points, however, we must reject defendants' ultimate conclusion.

There would seem to be two possibilities: either the truck was damaged before decedent died, or decedent died before the truck was damaged. If the truck was damaged first, plaintiff is authorized by the survival statute to bring an action in her capacity as decedent's administratrix to recover for that damage. K.S.A. 60–1801. If decedent died first, the truck would have passed in an undamaged condition to his estate. Then, after the truck was later damaged, plaintiff could once again bring suit to recover for that damage in her capacity as decedent's administratrix. *Murdock v. First National Bank*, 220 Kan. 459, 467, 553 P.2d 876, 883 (1976). In the latter event, no statutory authorization (such as that contained in the survival statute) would even be necessary. We thus reject defendants' contention that any suit for recovery of damage to the tractor-trailer must be brought in conjunction with the wrongful death action. Accordingly, we will deny defendants' motion for summary judgment on that issue.

### D. *Independent Liability of Campbell 66.*

■ Quite apart from the presumed vicarious liability of Campbell 66 for any negligence attributable to Budnik, plaintiff alleges that Campbell 66 is independently liable for its own negligent conduct. This allegation of negligence is based on that defendant's failure to warn Budnik that the intersection of Highways 59 and 166 was a dangerous one. In response to this allegation, Campbell 66 makes a dual argument. First, it contends that its failure to warn Budnik of the intersection's danger was not the proximate cause of decedent's injuries. And second, it contends that it owed no legal duty of care toward decedent. Because we conclude that the failure of Campbell 66 to warn Budnik of the intersection's dangers was not the proximate

cause of the collision, we need not address the question of to whom Campbell 66 owed a legal duty of care.

The Kansas Supreme Court has defined proximate cause as follows:

> The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.

*Wilcheck v. Doonan Truck & Equipment, Inc.*, 220 Kan. 230, 235, 552 P.2d 938, 942–43 (1976). In the instant case, the parties agree that the route by which Budnik approached the intersection where the collision occurred was well signed. According to the Highway Patrol diagram, there were two "stop ahead" signs located 1,409 and 746 feet before the stop sign, which, in turn, was located immediately before the intersection. That diagram also indicates that a driver passing along Budnik's route should have had a "clear view of [the] intersection" at a point located 1,185 feet before the stop sign. Campbell 66 had no reason to suspect that a professional truck driver such as Budnik would fail to see either the "stop ahead" signs or the intersection itself. Thus, the proximate cause of the collision was not Campbell 66's failure to warn Budnik of the intersection, but rather Budnik's failure to see and/or heed the "stop ahead" and stop signs. We therefore conclude that Campbell 66 is entitled to summary judgment on the issue of its independent liability for the death of plaintiff's decedent.

### E. *Punitive Damages.*

■ Plaintiff contends that Budnik and Campbell 66 are both independently liable for punitive damages, and that Campbell 66 and Milligan are both indirectly liable for punitive damages (i.e., based on the "wanton" conduct of their agent, Budnik). To establish direct liability for punitive damages, a plaintiff must prove that a defendant's conduct evidenced at least a "wanton disregard for the rights of others." *At-*

*kinson v. Orkin Exterminating Co.*, 5 Kan.App.2d 739, 745, 625 P.2d 505, 511 (1981), *affirmed*, 230 Kan. 277, 634 P.2d 1071 (1981). As noted in part I.A. of this memorandum, there exists at least a factual question as to whether Budnik's conduct was wanton. As to her, then, we must deny defendants' motion for summary judgment on the issue of punitive damages.

■ In part I.D. of this memorandum, we concluded that the actions of Campbell 66 were not the proximate cause of decedent's death and would thus not subject that defendant to liability for actual damages. With no right to recover actual damages from that defendant, plaintiff is similarly unable to recover punitive damages. *Stevens v. Jayhawk Realty Co.*, 236 Kan. 90, 91, 689 P.2d 786, 787 (1984). As to Campbell 66, then, we will grant defendants' motion for summary judgment on the issue of direct liability for punitive damages.

■ As noted above, defendants Campbell 66 and Milligan have both stipulated that at all material times Budnik was operating her vehicle within the scope of her authority as their agent. We have also concluded that Budnik's conduct would arguably subject her to liability for punitive damages. Plaintiff now seeks to hold Campbell 66 and Milligan indirectly liable for punitive damages based on Budnik's conduct.

All parties recognize that Kansas law does not permit a principal to be held "vicariously" liable for punitive damages based on the acts of an agent. Rather, a plaintiff must first prove the principal's "complicity" in the agent's wanton or willful conduct. *Kline v. Multi-Media Cablevision, Inc.*, 233 Kan. 988, 990–91, 666 P.2d 711, 713–14 (1983). As the appropriate standard for establishing complicity, Kansas has adopted section 909 of the *Restatement (Second) of Torts*. That section provides as follows:

> Punitive damages can properly be awarded against a master or other princi-

pal because of an act by an agent if, but only if,

 (a) the principal or a managerial agent authorized the doing and the manner of the act, or

 (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or

 (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

 (d) the principal or a managerial agent of the principal ratified or approved the act.

*Quoted in Kline*, 233 Kan. at 990, 666 P.2d at 714. In the instant case, plaintiff contends both that Budnik was employed in a managerial capacity by the two other defendants and that those defendants ratified her allegedly wanton conduct.

Plaintiff suggests that the fact that Budnik was entrusted with the operation of a 60–foot long tractor-trailer carrying nearly twenty tons of cargo at high speeds creates a question of fact as to whether she was acting in a managerial capacity. We disagree. It is uncontroverted that Budnik supervised no other employees and had no impact on the development of corporate policy. We thus deem it irrelevant that Budnik was entrusted with the operation of the tractor-trailer. If every employee entrusted with the operation of expensive equipment were deemed managerial, the concept of managerial capacity would lose all utility.

Plaintiff's ratification argument is similarly strained. It is uncontroverted that, subsequent to the collision, Budnik was no longer allowed to drive tractor-trailers. Because Budnik was not discharged from her employment, however, plaintiff contends that a jury should be allowed to infer ratification of her allegedly wanton conduct. The Kansas Supreme Court has not permitted such an inference. In *Kastrup v. Yellow Cab and Baggage Co.*, 129 Kan. 398, 405, 282 P. 742, 745 (1929), the court noted that ratification of an employee's act was not inferable from the mere fact that the company did not discharge him.

Alternatively, plaintiff contends that "there is insufficient evidence for the Court to decide as a matter of law whether or not there was ratification, one way or the other. The plaintiff is not required to prove her case on all issues during the discovery process." Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment, at 14. We note that discovery in this action has long since closed. Thus, while defendants may not have *disproven* ratification, they have no obligation to do so. As the Supreme Court only recently noted, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, —— U.S. at ——, 106 S.Ct. at 2552. Defendants have adequately "point[ed] out" to the court "that there is an absence of evidence to support [plaintiff's] case" on the issue of ratification. *See Id.*, —— U.S. at ——, 106 S.Ct. at 2554. Accordingly, defendants are entitled to summary judgment on that issue.

Absent a proper showing of either Budnik's managerial capacity or the moving defendants' ratification of her conduct, plaintiff's attempt to hold Campbell 66 and Milligan indirectly liable for punitive damages must fail. We will thus grant summary judgment for those defendants on the issue of indirect liability for punitive damages.

## II. *Plaintiff's Motion to Strike.*

 The pre-trial order entered in this action on December 19, 1985, provided that witness lists were to be filed with the clerk by January 6, 1986. On February 6, 1986, defendants submitted the name of Michael Adams, Ph.D., as an additional expert witness on their behalf. Citing the deadline imposed in the pre-trial order, plaintiff now moves to strike Dr. Adams from the list of defendants' expert witnesses.

Based on the arguments of the respective parties, we conclude that an honest

misunderstanding has occurred. Whether intentional or not, counsel for plaintiff led counsel for defendants to believe that they had an agreement to extend the deadline for filing witness lists until February 6, 1986, and that that agreement covered experts as well as fact witnesses. Such extension by agreement of counsel was explicitly authorized in the pre-trial order. In any event, plaintiff has pointed to no real prejudice as a result of this late addition to defendants' expert witness list. Plaintiff has known of Dr. Adams for over five months, her counsel have received a copy of Dr. Adams' report, and the case has not yet been set for trial. Accordingly, regardless of whether defendants were "entitled" to amend their expert witness list, we will deny plaintiff's motion to strike Dr. Adams' name from that list.

### ORDER

IT IS THEREFORE ORDERED that defendants' motions for partial summary judgment are granted as to the independent liability of defendant Campbell 66 Express, Inc., and as to all liability of defendants Jerry B. Milligan and Campbell 66 Express, Inc., for punitive damages. Said motion is denied in all other respects.

IT IS FURTHER ORDERED that plaintiff's motion to strike defendants' supplement to their designation of experts is denied.