No. 96,060

ESTATE OF ETHEL F. DRAPER, deceased, *Appellee*, v. BANK OF AMERICA, N.A., as Trustee of the ETHEL F. DRAPER IRREVOCABLE VOLUNTARY TRUST AGREEMENT DATED APRIL 8, 1982, *Appellee/Cross-appellee*, FIRST CHRISTIAN CHURCH OF OLATHE, KANSAS, *Appellant*, JANIS M. WALESKI MURPHY and MARY H. MOELLER, *Appellees/Cross-appellants*, UMB BANK, N.A., AMERICAN CANCER SOCIETY HEARTLAND DIV., and OLATHE MEDICAL CTR, *Appellees*.

(205 P.3d 698)

Opinion filed April 17, 2009.

*Kurt S. Brack*, of Holbrook & Osborn, P.A., of Overland Park, argued the cause and was on the briefs for appellant First Christian Church of Olathe, Kansas.

*Michael R. Ong*, of Law Office of Michael Ong, P.A., of Leawood, argued the cause, and *Michelle M. Krambeck Burge*, of the same firm, was with him on the briefs for appellees/cross-appellants Janis M. Waleski Murphy and Mary H. Moeller.

*Barry M. Martin,* of Speer & Holliday, LLP, of Olathe, argued the cause and was on the briefs for appellee Estate of Ethel F. Draper.

The opinion of the court was delivered by

LUCKERT, J.: This case involves questions concerning the availability of a constructive trust remedy when an estate attempts to bring into the estate some assets that the decedent wrongfully transferred. In addition, issues are raised regarding the applicability of the nonclaim statute and various other statutes of limitation to claims brought by the estate against those who possess the assets.

We hold a constructive trust was appropriately imposed by the district court. Uncontroverted facts establish that the decedent executed an antenuptial agreement in which she promised to devise a specified portion of her entire estate to her husband's sons from a prior marriage. Decedent violated the duty of good faith implied in that agreement by placing almost all of her assets in irrevocable trusts that did not benefit her husband's sons. We further hold that the nonclaim statute does not apply to the Estate's action to marshal assets and the Estate's action did not accrue until the decedent's death, at the earliest.

## Background

In April 1967, Clark Draper and Ethel Catlin executed an antenuptial agreement in contemplation of their marriage. Although Ethel had no children, Clark had three sons from a previous marriage. The antenuptial agreement stated that both Clark and Ethel had "substantial property and property rights" and provided that each would retain his or her separate assets and that neither would dispose of property without the consent of the other. Income from the assets would be shared in "a common fund for their mutual support and living expenses." The parties acknowledged that each of them had prepared wills to be executed after the marriage and agreed they would not revise or revoke the wills "during the lifetime of both the parties hereto without both parties hereto consenting to such change." Ethel agreed that she would consent to Clark's will and, if she survived Clark, she would maintain a valid will devising to Clark's sons "not less than one-fourth to each of them of her entire estate remaining after the payment of debts,

administrative expense, taxes or other obligations." Clark executed a will leaving a substantial portion of his estate to Ethel should she survive him.

Clark died testate in January 1977, and Ethel (Ethel F. Draper) received her share of his estate as Clark's surviving spouse. In September 1977, before Clark's estate was settled, Ethel created and funded an irrevocable trust whose successor trustee is UMB Bank, N.A. (UMB). This trust allowed Ethel to receive the income and corpus during her lifetime. Upon her death, the trust income and corpus were to be distributed to, among others: First Christian Church of Olathe, the Kansas City Chapter of the American Cancer Society (American Cancer Society), Olathe Medical Center, Mary Helen Moeller, and Janis M. Waleski Murphy. Clark's sons were not mentioned.

In April 1982, Ethel executed a will which divided her estate equally among Clark's three sons. That same day, Ethel created another irrevocable trust whose successor trustee is Bank of America. As with the other trust, Ethel was to receive income from the trust and could receive the corpus. The remainder beneficiaries of this trust were the same as those listed in the 1977 UMB trust. When Ethel died in October 2002, she left a probate estate of less than $10,000, while the total assets in the two irrevocable trusts exceeded $1 million. Ethel's will was admitted to probate in January 2003.

In December 2003, Clark's son Gerald T. Draper, executor of the Estate of Ethel F. Draper, deceased (Estate), filed this action on behalf of the Estate against Bank of America and UMB. In the petition and a subsequently filed first-amended petition, the Estate alleged Ethel "was beyond her authority and capacity under the constraints of the antenuptial agreement" when she transferred most of her assets into the two irrevocable trusts. As a result, the transfers were void and the assets "remain assets of her probate estate." More specifically, the Estate alleged that Ethel committed intentional fraud and "fraud implied in the law" and that she breached the antenuptial contract and her fiduciary duties. All of these claims are based on the obligations imposed on Ethel in the antenuptial agreement, which according to the Estate made Ethel

a "continuous trustee of all of her assets" and created a special, fiduciary duty to act in good faith to preserve the assets for disposition by will. The requested remedy was primarily the imposition of a constructive trust on three-quarters of the trust assets and to place these assets in the Estate. Later, the petition was amended to add the trust beneficiaries as defendants.

In its answer to the petition, the American Cancer Society claimed that the Estate's action was barred by the statutes of limitation and repose in K.S.A. 60-511, K.S.A. 60-513, and K.S.A. 60-515. It also claimed that the limitations period under K.S.A. 59-2239 for filing estate claims had expired. The American Cancer Society filed a motion to dismiss based on these statutes, and the other named defendants joined in this motion.

The Estate's response to the motion to dismiss was that none of the statutes cited could apply to the Estate, which exists as a separate entity from Ethel herself. The district court agreed with the Estate and denied the defendants' motion to dismiss, stating that this was "an action on behalf of the estate to marshal the assets, period." Following this ruling, the Estate reached a settlement with Olathe Medical Center and American Cancer Society. Next, First Christian, Waleski Murphy, and Moeller filed a motion for summary judgment, and the Estate did as well. In its memorandum decision, the district court concluded that the antenuptial agreement contained an implied duty which prevented Ethel from divesting Clark's sons of their share of the trust assets. In the district court's view, the antenuptial agreement had created a life estate for Ethel in the marital property.

The district court also found that Ethel's transfers to the irrevocable trusts were void because the transfers exceeded her authority under the agreement. The court granted the Estate's summary judgment motion and ordered that the property be placed in a constructive trust for Clark's sons. The defendants' motions for summary judgment were denied.

First Christian, Waleski Murphy, and Moeller appealed the district court's decision. UMB and Bank of America were also parties to the appeal because of their roles as trustees. First Christian contended on appeal that (1) the district court erred in ordering a

constructive trust in favor of the Estate on the assets of the irrevocable trusts because it did not make a finding of fraud; (2) K.S.A. 60-515 barred the action since it was commenced more than 1 year after Ethel's death; and (3) Clark's sons knew of Ethel's trusts as early as 1985, which barred the Estate's claims pursuant to the statute of repose. Waleski Murphy and Moeller argued that the nonclaim statute and various statutes of limitation barred the action, which they contended accrued in 1977 when Ethel first transferred assets into an irrevocable trust. In response, the Estate raised claims involving the interpretation of the antenuptial agreement and Ethel's action.

In a split decision, the Court of Appeals reversed the district court. *Estate of Draper v. Bank of America*, 38 Kan. App. 2d 183, 164 P.3d 827 (2007). The Court of Appeals concluded that the antenuptial agreement did not restrict Ethel with respect to gifting or inter vivos transfers of her property; further, no language in the agreement restricted Ethel from creating irrevocable trusts. Consequently, the panel determined that Ethel complied with the clear language of the antenuptial agreement and did not breach the contract. 38 Kan. App. 2d at 189.

Regarding K.S.A. 59-2239, the nonclaim statute, the majority stated that none of Clark's sons were disputing what was contained *in* the Estate. The entire purpose of this lawsuit, the majority concluded, was to collect assets which were *outside of* the Estate—in Ethel's irrevocable trusts. The majority held that compliance with K.S.A. 59-2239 is "wholly unrelated to this action" and, therefore, any action against the Estate would have been futile. 38 Kan. App. 2d at 190.

Judge Green wrote a concurring opinion in which he agreed with most of the majority's discussion, but he disagreed with the majority's holding regarding K.S.A. 59-2239. 38 Kan. App. 2d at 191-92. Judge Green pointed out that the remedies sought by the Estate were based on Ethel's alleged breach of the antenuptial agreement. Further, it was undisputed that Clark's sons were the intended third-party beneficiaries of that agreement. Thus, in Judge Green's view, Clark's sons had a claim against Ethel to the extent she failed to fulfill her obligations under the contract. As

such, because Ethel was deceased and could no longer be sued, Clark's sons' claims based upon Ethel's alleged breach of the antenuptial agreement should have been brought against Ethel's estate. Therefore, Judge Green would have found the case was reversible based on the "estate claims" being time-barred pursuant to K.S.A. 59-2239. 38 Kan. App. 2d at 192 (Green, J., concurring).

Because this case potentially conflicts with another Court of Appeals case, *Nelson v. Nelson*, 38 Kan. App. 2d 64, 162 P.2d 43 (2007), in which similar issues arose involving the Kansas nonclaim statute, we granted the petitions for review filed in both cases. See K.S.A. 20-3018(b); K.S.A. 60-2101(b).

## *Standards of Review*

Our standard of review on appeal from summary judgment is well settled:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

To the extent there is no factual dispute, appellate review of an order granting summary judgment is unlimited. *Polson v. Farmers Ins. Co.*, 288 Kan. 165, Syl. ¶ 1, 200 P.3d 1266 (2009).

In addition, resolution of the Estate's contentions will involve the examination and construction of the Kansas nonclaim statute, K.S.A. 59-2239, and appellate courts exercise unlimited review when construing statutes. *Polson*, 288 Kan. at 32. Similarly, a de novo standard of review applies to the construction of written instruments, which we are called upon to do in this case as we consider the effects of the antenuptial agreement. *Miller*, 288 Kan. at 168. Under this latter rule, regardless of the construction given a

written contract by the district court, an appellate court may construe a written contract and determine its legal effect. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

### Constructive Trust

The Estate contends that the Court of Appeals erred in reversing the district court's decision to impose a constructive trust on the irrevocable trust assets. It specifically takes issue with the panel's determination that the Estate "never claimed there was a confidential relationship" and that Ethel did not breach the antenuptial agreement by making the property transfers to the trusts. 38 Kan. App. 2d at 188.

This issue arises because the Court of Appeals concluded that actual or constructive fraud had to be proved in order for a constructive trust to arise. 38 Kan. App. 2d at 187-88. As discussed in our decision in *Nelson v. Nelson*, 288 Kan. 570, 590, 205 P.3d 715 (2009), actual or constructive fraud does not have to be established before the constructive trust remedy can be ordered. Rather, a constructive trust is an appropriate remedy "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Restatement of Restitution: Quasi Contracts and Constructive Trusts § 160 (1936) (Restatement of Restitution). In *In re Estate of Sauder*, 283 Kan. 694, 719, 156 P.3d 1204 (2007), we explained that unjust enrichment arises when (1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust.

Where, as here, a person who holds property that is subject to a beneficial interest transfers the property, an action may be brought against the third party for the return of the property. The Restatement explains:

"(1) Where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser.

"(2) Where the owner of property transfers it in fraud of third persons, the transferee holds the property subject to their claims, unless he is a bona fide purchaser." Restatement of Restitution § 168.

Consistent with this provision, the Estate claims (1) that Ethel had a beneficial interest—the equivalent of a life estate—and transferred the property in violation of a duty created by the antenuptial agreement, and (2) that Ethel transferred the assets in fraud. More specifically, in alleging the violation of a duty, the Estate alleges Ethel committed actual and constructive fraud, breached the antenuptial contract, and breached her fiduciary duties. As the case has progressed, the theories became more focused and before the Court of Appeals the focus was on constructive fraud. We, therefore, will focus on that claim as well.

Constructive fraud is " 'a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty [n]or purpose or intent to deceive is necessary.' " *Garrett v. Read*, 278 Kan. 662, 674, 102 P.3d 436 (2004). Two additional elements must also be proven in order to establish constructive fraud: (1) a confidential relationship, and (2) a betrayal of this confidence or a breach of a duty imposed by the relationship. 278 Kan. at 674; see also *Moore v. State Bank of Burden*, 240 Kan. 382, 389, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987) (party must also conceal facts that the party has legal or equitable duty to communicate, about which the party could not be innocently silent).

A "confidential relationship" refers to any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party. *Heck v. Archer*, 23 Kan. App. 2d 57, 63, 927 P.2d 495 (1996). For purposes of constructive fraud, the mere relationship between parent and child or between spouses does not raise a presumption of a confidential and fiduciary relationship. *Olson v. Harshman*, 233 Kan. 1055, 1059, 668 P.2d 147 (1983); *Curtis v. Freden*, 224 Kan. 646, 651, 585 P.2d 993 (1978). However, a confidential relationship can be based on an agreement between the owner of property and another

who will distribute the owner's property in a specified manner upon the owner's death. *Heck*, 23 Kan. App. 2d at 67.

Contrary to the Court of Appeals' holding, the petition in this case alleges these elements. In pleading constructive fraud, the Estate alleged that Clark relied upon Ethel's agreement to leave three-quarters of her estate to his sons when he executed his will and devised his property to Ethel for her use during her lifetime without making provision for his sons—in other words, a confidential relationship existed between Ethel and Clark. In addition, the Estate alleged that the agreement made Ethel a constructive trustee who had the fiduciary duty to act in good faith and preserve the assets for disposition by will according to the terms of the antenuptial agreement.

In addition to adequately pleading constructive fraud, the Estate argues it established the undisputed facts necessary for a finding that a confidential relationship existed. The Estate notes it is uncontroverted that there was a written agreement between Clark and Ethel, the two were married, Clark relied on Ethel's promises in executing the agreement, Clark bequeathed her a share of his estate in conformity with the agreement, and Ethel violated the duty of good faith implied in the agreement by gifting her property to third parties who were remainder beneficiaries of her trusts. These facts, according to the Estate, establish constructive fraud. The Court of Appeals rejected this argument.

Confidential Relationship

First, the Court of Appeals stated that the district court made no finding that a confidential relationship existed and concluded an appellate court could not participate in fact finding. See *Sall v. T's, Inc.*, 281 Kan. 1355, 1362, 136 P.3d 471 (2006) (appellate court is not a factfinding court). This conclusion does not reflect the de novo review that appellate courts perform when an appeal from summary judgment is based upon uncontroverted facts. See *Polson*, 288 Kan. 165, Syl. ¶ 1. In addition, the conclusion does not reflect an appellate court's duty to conduct a de novo review of contracts, including antenuptial agreements, or the fact that the Estate's argument regarding the confidential relationship is based

on the terms of the antenuptial agreement. See *Miller*, 288 Kan. 27, Syl. ¶ 2. Thus, contrary to the Court of Appeals' conclusion, we can review the antenuptial agreement and the uncontroverted facts to determine if a confidential relationship existed between Ethel and Clark.

In this regard, we pause to note that the Court of Appeals incorrectly examined whether there was a "confidential relationship between any of the parties." 38 Kan. App. 2d at 188. This inquiry fails to reflect the nature of this case, which is based on a confidential relationship between Clark and Ethel because of the antenuptial agreement. The defendants are not alleged to have committed any wrong; they are sued because they have been unjustly enriched as a result of Ethel's breach of duty.

Focusing on Clark's and Ethel's relationship, Kansas has repeatedly recognized a confidential relationship arises when spouses agree to leave property by will. Most recently, in *Garrett*, 278 Kan. at 674-75, we held that violation of such an agreement justified the imposition of a constructive trust. There, the children of the decedent's predeceased spouse sought a constructive trust on a portion of the decedent's estate. The spouses, who both had children from previous marriages, executed nearly identical wills, leaving the entire estate to the survivor and then to the children and one set of grandchildren, evenly divided. The wills evidenced a " 'full and explicit provision for the disposition' " of the estate at the death of the surviving spouse. 278 Kan. at 673. After the husband died and his entire estate passed to his spouse, she revoked her will and executed a new will in which she essentially disinherited her spouse's children.

Although the decedent's first will was revoked and was no longer in effect at the time of her death, her husband's children argued the first will was contractual, her estate remained subject to its terms, and a constructive trust was an appropriate remedy. They proceeded on the theory of constructive fraud.

This court concluded the married couple's agreement regarding distribution of their property after the death of the survivor created a confidential relationship based on the husband's trust in his wife to distribute four-sevenths of the estate to his children. *Garrett*,

278 Kan. at 674-75 (citing *Heck*, 23 Kan. App. 2d at 67). The agreement imposed a duty upon the wife, and she breached this duty by executing the second will and disinheriting her spouse's children. Consequently, this court held the district court properly imposed a constructive trust. 278 Kan. at 675.

A similar conclusion was reached in *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 887 P.2d 1152, *rev. denied* 257 Kan. 1092 (1995). In that case, a husband and wife each had a child from previous marriages and brought property into the marriage which they intended to pass to their respective children. However, at the time of the husband's death, the couple held most of the property in joint tenancy. The district court found there was an agreement that the surviving spouse would enjoy the disputed property but then pass it to the decedent's child. Contrary to the agreement, the surviving wife transferred the disputed property to her child. Based upon this evidence, the Court of Appeals affirmed the district court's conclusion that there had been constructive fraud and that a constructive trust was an appropriate remedy. 20 Kan. App. 2d at 363-69.

With regard to the confidential relationship element, the *Kampschroeder* court focused on the husband and wife's "agreement in which each relied on the survivor to see that the assets were distributed." Because the husband "placed trust and confidence" in his wife to see that his child received the proper distribution of assets, "it would be inequitable to permit her to disregard the terms of that agreement." 20 Kan. App. 2d at 366; see *Gemmel v. Fletcher*, 76 Kan. 577, 92 P. 713 (1907).

The same situation arose in this case; Clark made an agreement with Ethel, upon his death he left his assets to her, and he trusted her to comply with the agreement for the benefit of his sons. Under Kansas law it is clear that a confidential relationship existed.

## Breach of Duty

The second reason the Court of Appeals reversed the imposition of a constructive trust was the conclusion that Ethel had not violated any duty arising from the confidential relationship. The Court of Appeals rejected the district court's determinations that the an-

tenuptial agreement implied that Ethel had a duty to " 'refrain from divesting Clark's sons of their share of her estate' " and, in essence, had a life estate in the marital property. *Estate of Draper*, 38 Kan. App. 2d at 188. Instead, according to the Court of Appeals, the unambiguous antenuptial agreement merely required Ethel to execute and maintain a valid will, which she did. And, further, the Court of Appeals noted Ethel more than followed the agreement's requirement to leave " 'not less than one fourth' " of her estate " 'remaining after the payment of debts, administrative expenses, taxes and other legal obligations thereof,' " to each of Clark's sons in that Ethel left her entire estate to Clark's sons. 38 Kan. App. 2d at 189.

Asking us to affirm the Court of Appeals, First Christian argues that the antenuptial agreement required Ethel to leave three-quarters of her probate *estate* to Clark's sons, not three-quarters of her *assets*. First Christian suggests that the use of the term "estate" rather than "assets" shows a deliberate choice by the parties. The defendants, as did the Court of Appeals, also focus on the lack of any clear language establishing a life estate.

In response, the Estate does not dispute the fact that the agreement's language does not contain an explicit statement that a life estate is created. Instead, the Estate argues that the Court of Appeals erred in not holding that the duty of good faith and fair dealing imposed the equivalent of a life estate.

First Christian is correct that the term "assets" could convey a different meaning than "entire estate." But the terms could also be deemed synonymous. Without context, the term "entire estate" is ambiguous because the law recognizes many different types of "estates." For example, the terms "probate estate," "taxable estate," and "augmented estate" can each be substituted for the term "entire estate," and each such estate would include different assets. Compare K.S.A. 59-6a201(g) (defining probate estate) with K.S.A. 59-6a204 (defining net probate estate) and K.S.A. 59-6a205 (defining augmented estate; adopted after Draper antenuptial agreement was executed); see *In re Estate of Hjersted*, 285 Kan. 559, 175 P.3d 810 (2008).

Nevertheless, in context, the term related to Ethel's will and, as such, was probably intended to refer to the estate subject to probate administration. However, in context of the recognition that each spouse would maintain separate property, the use of the word "entire" evidenced an intent to integrate both spouses' property on death to be passed to the sons. In addition, a reference to what was essentially a probate estate does not necessarily mean that only property held in Ethel's name at her death would be the "entire estate" because this court has recognized that property belongs in an estate if it was fraudulently and illegally transferred by the decedent. See *Houdashelt v. Sweet*, 163 Kan. 97, 180 P.2d 604 (1947); see also K.S.A. 58a-505(a)(3) ("the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors"). Hence, the term "entire estate" does not foreclose the Estate's argument.

What then was the meaning of the provision requiring Ethel to maintain a valid will devising to Clark's sons "not less than one-fourth to each of them of her entire estate"? As the Court of Appeals stated, there is no language in this provision or other parts of the antenuptial agreement creating a life estate by explicitly stating Ethel would have the use of the property during her lifetime. See, *e.g.*, *In re Estate of Burcham*, 248 Kan. 897, 904-05, 811 P.2d 1208 (1991); *In re Estate of Lehner*, 219 Kan. 100, 103-07, 547 P.2d 365 (1976). However, the language used is similar to several cases imposing a life estate when there is an agreement between a husband and wife regarding property that remains at the surviving spouse's death. On several occasions, this court has construed that language imposed a life estate with power of disposition for necessities. *E.g.*, *In re Estate of Jones*, 189 Kan. 34, 366 P.2d 792 (1961) (life estate created by stating that "at the death of the survivor, it is the will and wish of both testators herein that all property thus possessed shall then be divided equally between our three children or their heirs"); *Sharpe v. Sharpe*, 164 Kan. 484, Syl. ¶ 3, 190 P.2d 344 (1948) (life estate created by phrase "any remaining property"); *In re Estate of Ciochon*, 4 Kan. App. 2d 448, 609 P.2d 177, *rev. denied* 228 Kan. 806 (1980) (life estate created by stating "upon the death of said survivor, the remainder shall be given" to

children). These decisions recognize that the expression of a desire to direct the devise of the remainder of one's property is an expression of intent that there be a remainder. We need not attempt to interpret this intent from the contract terms, however, because the same conclusion results from application of the duty of good faith and fair dealing.

*Estate of Chayka*, 47 Wis. 2d 102, 176 N.W.2d 561 (1970), is illustrative. In that case, the joint and mutual will provided that all the property would be left to the surviving spouse and then, on that person's death, the property would pass as designated. After the husband's death, the wife remarried and over time transferred property into joint tenancy with her second husband. The court held: "The duty of good faith is an implied condition in every contract, including a contract to make a joint will, and the transfers here violate such good faith standard by leaving the will in effect but giving away the properties which the parties agreed were to be bequeathed at the death of both to a designated party." 47 Wis. 2d at 108.

Kansas also recognizes the duty of good faith and fair dealing in every contract, with the exception of employment-at-will contracts. *St. Catherine Hospital of Garden City v. Rodriguez*, 25 Kan. App. 2d 763, 765, 971 P.2d 754 (1998); *Hartford v. Tanner*, 22 Kan. App. 2d 64, 71, 910 P.2d 872, *rev. denied* 259 Kan. 927 (1996). In discussing contracts made either before or after marriage that are intended to fix property rights between a husband and wife, this court has repeatedly stated that the agreements are to be liberally interpreted to carry out the intention of the makers and to uphold such contracts where they are fairly and understandably made, are just and equitable in their provisions, and are not obtained by fraud or overreaching. *E.g., In re Estate of Johnson*, 202 Kan. 684, 691, 452 P.2d 286 (1969).

With uniformity courts have recognized the duty of good faith to be implicit in agreements to devise property in a certain way, whether that agreement is reached in an antenuptial agreement or a different type of contract, and under this duty it is generally recognized that the promisor may not "thwart the expectation of the promisee by squandering his assets irresponsibly or by making

gifts of them to other persons. The promisor maintains his *power* to dispose of his assets, but he has no *right* to do so in a manner which will frustrate the purposes of his contract." Rheinstein, *Critique: Contracts to Make a Will*, 30 N.Y.U. L. Rev. 1224, 1232 (1955). As stated in a decision of the South Carolina Supreme Court, to agree to devise property to another by will and then "turn right around and annul and effectively destroy such testamentary provision by conveying away all of [that] property to [a different person] . . . would be 'keeping the word of the promise to the ear and breaking it to the hope.' " *Bruce v. Moon*, 57 S.C. 60, 74, 35 S.E. 415 (1900); see, *e.g., Wagar v. Marshburn*, 241 Ala. 73, 79, 1 So. 2d 303 (1941); *Ikegami v. Ikegami*, 1 Haw. App. 505, 508-09, 620 P.2d 768 (1980); *Dubin v. Wise*, 41 Ill. App. 3d 132, 138-39, 354 N.E.2d 403 (1976); *Skinner v. Rasche*, 165 Ky. 108, 112-14, 176 S.W. 942 (1915); *Scott v. Marden*, 153 Md. 1, 11-13, 137 A. 518 (1927); *Nile v. Nile*, 432 Mass. 390, 400-02, 734 N.E.2d 1153 (2000); *Johnston v. Tomme*, 199 Miss. 337, 347-50, 24 So. 2d 730 (1946); *Bower v. Daniel*, 198 Mo. 289, 320-28, 95 S.W. 347(1906); *Brown v. Webster*, 90 Neb. 591, 602-05, 134 N.W. 185 (1912).

The Massachusetts Supreme Court, in applying the duty of good faith to an agreement to will property, addressed some of the arguments in this case. In *Nile*, 432 Mass. 390, a father agreed in a postdivorce contract to leave a specified portion of his estate to the children of the marriage. The father later placed his assets in a trust, leaving no assets subject to probate and not providing for his children. His sole surviving child sought to enforce the contract; in response, the trust beneficiaries argued that the decedent's agreement to leave a portion of his "estate" did not obligate him to leave a portion of all the property he "enjoyed and controlled on his death" but only a portion of his "probate estate." The court disagreed and concluded the argument "defies the covenant of good faith and fair dealing." 432 Mass. at 399.

Similarly, the duty of good faith and fair dealing has been applied when the contract to will is made in an antenuptial agreement. In *Dubin*, 41 Ill. App. 3d 132, the husband agreed to leave his wife one-quarter of his estate if she surrendered any other claims to his

property. Breaching this agreement, the husband transferred the bulk of his assets to his sons from a previous marriage. The wife's heirs alleged the husband intentionally dissipated the assets in an attempt to defeat the wife's antenuptial rights, and the trial and appellate courts agreed that the transfers were void. In reaching that holding, the Illinois appellate court found the transfers to be "a breach by the promisor of an implied term of the antenuptial agreement, namely, that the promisor will deal with his or her own property in good faith." 41 Ill. App. 3d at 137-38.

The *Dubin* court explained that this duty did not mean that the promisor could not use assets:

" 'Where a man has entered into an antenuptial agreement with a woman who becomes his wife to give her a proportional part of his estate, he may make gifts during his life without breaking the agreement if the gifts are made in good faith and are reasonable in amount. [Citation omitted.] . . . 'If the decedent had given away property [inter vivos] with furtive intent, for the purpose of defeating the antenuptial contract and [he defrauded] the plaintiff, the gift would [be] void.' [Citation omitted.]" 41 Ill. App. 3d at 137.

Other courts have imposed a similar standard, concluding good faith does not mean that the promisor has no rights to use the property or even to gift some property if done in good faith and in amounts that are reasonable under all the circumstances. Gifts cannot be made, however, if the main purpose is defeating the agreement and preventing it from operating for the benefit of those designated. See *Eaton v. Eaton*, 233 Mass. 351, 375-76, 124 N.E. 37 (1919); 1 Page on Wills § 10.23, pp. 519-21 (rev. ed. 2003); Rheinstein, 30 N.Y.U. L. Rev. at 1232; see generally Restatement (Second) of Contracts § 205, comment a (1979) (good faith emphasizes "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' ").

This standard has been applied in Kansas in a related context. In *Fourth Nat'l Bank v. First Presbyterian Church*, 134 Kan. 643, 7 P.2d 81 (1932), the wife bequeathed certain property to her husband for use during his life and provided that on his death the remainder was to pass to her children. When the husband at-

tempted to erect a memorial for his wife, the argument was made that he held only a life estate and did not have authority to dissipate the estate for nonessentials. The court did not label the husband's interest as a life estate but agreed he was a trustee of the property. This did not, however, obligate him to use the property only for necessities. Rather, the court explained:

"After the death of his wife he had dominion and control of her property as well as his own, and with the powers given him in the wills could make binding contracts relating to all the property other than that which was expressly excepted from a disposition of it. In the exercise of his powers there might be a reduction of the estate without affecting the validity of the contracts made. He was not required to keep the estate up to the value which it had when the wills were made or when his wife died. He may have made sales at a price lower than what might have been afterwards obtained. Some of his dealings may have turned out to be improvident or unprofitable investments which tended to reduce the estate, but if made in good faith these would not have operated to destroy the validity of the contracts he had made with others. He had a right to use money in keeping with his station in life and circumstances, and the right to meet the ordinary social and civic demands in the community." 134 Kan. at 648-49.

This standard, however, would not have allowed a breach of trust and a complete frustration of the purposes of the trust.

These authorities persuade us that the implied duty of good faith and fair dealing applied to Ethel's agreement to leave three-quarters of her estate to Clark's sons. This duty would not allow Ethel to make gifts that are inconsistent with the justified expectations of Clark that his sons would receive three-quarters of the entire estate Ethel enjoyed at the time of her death.

While good faith and reasonableness are usually questions of fact, summary judgment may be appropriate if the facts are uncontroverted and establish that a defined standard has not been met. *Gillenwater v. Mid-American Bank & Tr. Co.*, 19 Kan. App. 2d 420, 426, 870 P.2d 700 (1994); see *Trecom Business Systems, Inc. v. Prasad*, 980 F. Supp. 770, 775-76 (D. N.J. 1997). This is such a case. Ethel removed over $1 million in assets from her estate and left $10,000 to be distributed to Clark's sons. In light of the trust Clark reposed in Ethel and the agreement they reached, her giving away virtually all of her assets to others thwarted the intent

of the agreement and violated the duty of good faith that Ethel owed to Clark.

## Nonclaim Statute

Alternatively, the defendants argue that the Estate may not recover the assets because this action was not brought during the limitation period of the nonclaim statute, K.S.A. 59-2239(1), which requires "[a]ll demands . . . against a decedent's estate . . . shall be forever barred" unless brought in the time limitations of the statute. If the statute applies, this action was untimely and must be dismissed.

The district court did not specifically address the applicability of K.S.A. 59-2239, but the Court of Appeals briefly addressed the issue, stating: "Waleski Murphy and Moeller argue that the Estate's claims are time-barred due to the failure of one of the heirs to file a claim against Ethel's estate pursuant to K.S.A. 59-2239." *Estate of Draper*, 38 Kan. App. 2d at 190. The majority found the nonclaim statute inapplicable because "none of Clark's sons was disputing what was contained in the Estate." 38 Kan. App. 2d at 190.

The issue was the basis of Judge Green's concurring opinion. In his opinion, Judge Green noted that although the Estate sought a "variety of remedies" in the case, they were all based on Ethel's alleged breach of the antenuptial agreement. In Judge Green's opinion, Clark's sons had claims against Ethel's estate based upon Ethel's alleged breach of the antenuptial agreement, but any such claims were time-barred by K.S.A. 59-2239. He indicated this was an additional reason for reversal. 38 Kan. App. 2d at 191-92 (Green, J., concurring).

We agree with Judge Green that Clark's sons, not the Estate, were the intended third-party beneficiaries under the antenuptial agreement. Therefore, Clark's sons arguably had a claim against Ethel to the extent she failed to fulfill her contractual obligations. See *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 107 P.3d 1219 (2005) (third party can enforce contract if he or she is person intended to receive benefit by contracting parties); *Cory v. Troth*, 170 Kan. 50, 53, 223 P.2d 1008 (1950). And, as we have held in *Nelson v. Nelson,* 288 Kan. at 597-98, if third-party bene-

ficiaries seek to enforce a contract made by the decedent, they are making a demand against the estate and must bring a claim within the time limits of the nonclaim statute, K.S.A. 59-2239(1).

That does not mean, however, that a claim by the beneficiaries is the only action and procedure available for attempting to recover assets that allegedly should be in the estate but are not. Here the administrator of the Estate seeks to marshal assets and bring them into the Estate, raising the issue of whether this is an appropriate procedure or, as the defendants argue, is a disguised claim against the Estate. We conclude it is an appropriate procedure.

The duty to marshal assets is "[a]mong the primary duties of an executor [or administrator]." *Murdock v. First National Bank*, 220 Kan. 459, 467, 553 P.2d 876 (1976). K.S.A. 59-1401 confers the power to marshal assets, stating:

> "The executor or administrator shall: (a) Have a right to the possession of all the property of a resident decedent, except the homestead and allowances to the surviving spouse and minor children; (b) marshal all tangible personal property owned by a resident decedent located in the state of Kansas and all intangible personal property owned by a resident decedent wherever located, either directly or by ancillary administration; (c) take possession, within six months from the date of appointment, of all tangible personal property located in this state and all intangible property wherever located, to be held, administered and finally distributed as provided by law . . . . The executor or administrator, alone or with the heirs or devisees, may maintain an action for the possession of the real estate or to quiet title to it."

We note that while this statute creates some time obligations, no party has raised any issues regarding compliance, and an issue not briefed is deemed waived or abandoned. *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008).

Applying K.S.A. 59-1401, Kansas cases make clear that an action to marshal assets is properly brought by the representative of the estate and is not a claim against the estate. Two related cases, *Wright v. Rogers*, 167 Kan. 297, 205 P.2d 1010 (1949), and *In re Estate of Wright*, 170 Kan. 400, 227 P.2d 131 (1951), explain this.

In *Wright*, 167 Kan. 297, the decedent had deeded farm property to the defendants in exchange for a promise they would pay taxes, mortgage payments, and expenses related to farming the land. The defendants agreed that the property would be held in

trust for the decedent's benefit or for the benefit of decedent's heirs at law. Upon the decedent's death, the defendants refused to reconvey the property, the value of which exceeded the taxes, payments, and expenses they had paid. Some of the heirs at law brought suit directly against the defendants. In response, the defendants filed a motion to dismiss, arguing the action should have been brought in probate court by a representative of the estate. This court agreed and stated that an administrator should have been appointed, who in a fiduciary capacity "could proceed in the manner contemplated by G.S. 1947 Supp. 59-1401 and reduce such property to possession and bring it into the estate as an asset subject to final settlement and distribution." 167 Kan. at 300; see also *In re Estate of Slaven*, 177 Kan. 185, 188, 277 P.2d 580 (1955) (administrator claiming property should be in estate should apply for permission to bring action to set aside deeds).

Subsequently, in *In re Estate of Wright*, 170 Kan. 400, some of the same heirs as involved in *Wright*, 167 Kan. 297, sought to have an administrator appointed in order to have the real estate administered as part of the estate. One of the property owners, who was also an heir at law and had been a defendant in *Wright*, objected and argued the property was not a part of the decedent's estate at the time of her death and the probate court did not have jurisdiction because K.S.A. 59-2239 and the general statute of limitation barred the action. The court rejected the objections, noting that this was not a situation where a beneficiary makes a claim against the estate by contending a transfer of property was fraudulent or void—the situation presented in *Nelson*, 288 Kan. 570. Rather, the court described the petitioning heirs-at-law's action as seeking the administration of assets which had not previously been administered. Because the petition did not bring an action against the estate, it was not barred by the nonclaim statute. 170 Kan. at 406-07.

In reaching that conclusion, the court explained that allowing the action did not defeat the policy of the nonclaim statute. To support its conclusion, the court discussed *In re Estate of West*, 169 Kan. 447, 454, 219 P.2d 418 (1950). In that case, heirs filed objections to the final settlement because several tracts of real es-

tate had not been inventoried or administered. Each of the tracts had been conveyed by deeds that were not delivered by the decedent during his lifetime but were found upon his death and subsequently registered. In response to the objections to the inventory, it was argued that the objections were demands on the estate that had not been timely made. The court rejected that view and noted:

"Although it has been stated in some of our decisions that an object of the probate code is to provide for a speedy determination of the assets and liabilities of an estate so that it may be settled and a distribution made to the beneficiaries, it is of primary importance that all of the assets be collected and reduced to possession for such distribution and a contention by a beneficiary that all assets have not been collected ought not to be held barred in the absence of a specific statutory provision to that effect." 169 Kan. at 455.

The court held it was appropriate to bring the assets into the estate even though the nonclaim period had expired. 169 Kan. at 454-56.

These cases establish that it is appropriate for the administrator of Ethel's estate to seek to bring assets of the trusts into the Estate and an action to marshal assets is an appropriate mechanism to do so. In such a case, the nonclaim statute does not apply.

Nevertheless, some of the defendants suggest that the estate administrator—as a representative of the decedent—cannot bring a claim that requires the administrator to carry the burden of proving the decedent committed actual or constructive fraud or breached duties arising by contract or a fiduciary relationship. However, under Kansas law, this does not change the conclusion that the administrator can bring the action and marshal the assets. Although an estate's administrator or executor represents the decedent and it is part of the representative's duties to see that the expressed desires of the decedent are properly executed (*In re Estate of Hessenflow*, 21 Kan. App. 2d 761, 776-77, 909 P.2d 662 [1995], *rev. denied* 259 Kan. 928 [1996]), the administrator or executor also owes a duty to creditors and heirs to marshal assets and to act as a fiduciary for all interested persons. *In re Estate of Brasfield*, 168 Kan. 376, 383, 214 P.2d 305 (1950); *In re Estate of Hessenflow*, 21 Kan. App. 2d at 776. Those general principles were applied in *McGuire v. Davis*, 95 Kan. 486, 148 P. 755 (1915).

In *McGuire*, the court stated the issue to be whether an administrator acting for the benefit of the creditors can recover personal property fraudulently conveyed by the decedent to avoid the payment of debts. The court noted an earlier case, *Crawford's Adm'r v. Lehr*, 20 Kan. 509, 511-13 (1878), in which the court had held the administrator could not recover under those circumstances. The *McGuire* court reversed that holding, concluding "the right of an administrator seems clear to maintain an action to set aside, for the benefit of creditors, lands fraudulently conveyed by the decedent," and "the fact . . . the land has already been sold and converted to money" did not bar an action to recover the sale proceeds. 95 Kan. at 489-90.

Applying these holdings, we conclude that the administrator could bring this action, the action was not a claim against the Estate, and the action was not barred by the failure to bring a claim against the Estate within the period of the nonclaim statute.

## Statutes of Limitation

Finally, some defendants assert defenses based on general statutes of limitation, specifically K.S.A. 60-511 (breach of written contract), K.S.A. 60-513(a)(3) (fraud), and K.S.A. 60-515 (statute of repose). They argue Ethel's transfer of assets to the trusts triggered the accrual of the cause of action and the running of these statutes of limitation.

The district court rejected these arguments, concluding the action was brought by the Estate and the Estate's action could not have accrued before the Estate existed. The court found the issues relating to Clark's sons "immaterial." The Court of Appeals did not review these questions, finding them moot because of the ruling on the nonclaim statute. 38 Kan. App. 2d at 191. Nevertheless, through their briefs before this court, the parties have advanced their arguments.

Again, we note the parties have not addressed the time requirements in the marshaling statute, K.S.A. 59-1401, and, therefore, we will not address the possible implications of that provision on the parties' arguments.

As to the statutes of limitation arguments, we agree with the district court that this action did not accrue until the earliest time the plaintiff had a right to maintain a legal action. See *Pancake House, Inc. v. Redmon*, 239 Kan. 83, 87, 716 P.2d 575 (1986) (actions accrue "as soon as the right to maintain a legal action arises"). The equitable basis for imposing a constructive trust on the assets and requiring the defendants, who have committed no wrongdoing, to return the property is unjust enrichment that results from the defendants receiving and retaining property transferred by Ethel in breach of her duty of good faith. See Restatement of Restitution: Quasi Contracts and Constructive Trusts §§ 160, 168 (1936). It is generally recognized that such a cause of action accrues when the " 'enrichment becomes unjust.' [Citation omitted.]" *Vila v. Inter-American Investment, Corp.*, 536 F. Supp. 2d 41, 51 (D. D.C. 2008). As previously noted, for unjust enrichment to occur: (1) A benefit must have been conferred upon the defendant, (2) the defendant must have retained the benefit, and (3) under the circumstances, the defendant's retention of the benefit must be unjust. *In re Estate of Sauder*, 283 Kan. 694, 719, 156 P.3d 1204 (2007); see 536 F. Supp. 2d at 51. The statute of limitations begins to run when all of these elements are present. *Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 994 (8th Cir. 2007) (applying Kansas law and citing *Pancake House, Inc.*, 239 Kan. at 87); *Vila*, 536 F. Supp. 2d at 51. Often, this means that the action accrues when there is a request for the return of the property or when payment is made to or property is received by the defendant. See *Hartman v. Stumbo*, 195 Kan. 634, 637, 408 P.2d 693 (1965) (payment made); *Desai v. Franklin*, 177 Ohio App. 3d 679, 689-91, 895 N.E.2d 875 (2008) (request for return).

Here, the unjust enrichment did not occur until after Ethel's death. See *Engelbrecht v. Herrington*, 101 Kan. 720, 172 P. 715 (1917) (action for breach of contract to will property arises at death of promisor or when performance becomes legal impossibility); see also K.S.A. 58a-410 to K.S.A. 58a-416 (providing mechanism to modify or terminate irrevocable trusts upon beneficiaries' agreement). Thus, it was only at her death when she had not fulfilled her contract that the trustees had an equitable duty to return the

property or that the beneficiaries had a right to receive the property. All of the elements of unjust enrichment were present when defendants retained the property after Ethel's death.

This action was filed well within the limitation period of K.S.A. 60-512. See *Stehlik v. Weaver*, 206 Kan. 629, 637, 482 P.2d 21 (1971) (K.S.A. 60-512 applies to claims of unjust enrichment). There was no bar to this action by the Estate to seek a constructive trust on the assets in the defendants' possession.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.