NOT DESIGNATED FOR PUBLICATION

No. 122,528

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KIRK W. CAMPBELL and JILL A. CAMPBELL,
Individually and as Co-Trustees of the DANOR CAMPBELL TRUST and as
Co-Trustees of the MAVIS A. KABANCE
REVOCABLE LIVING TRUST,
*Appellants*,

v.

CORRIN G. KABANCE, Individually and as
Trustee of the CORRIN GALEN KABANCE
REVOCABLE LIVING TRUST,
*Appellee*.

MEMORANDUM OPINION

Appeal from Crawford District Court; JEFFRY L. JACK, judge. Opinion filed December 23, 2020.
Affirmed.

*Rachael K. Pirner* and *Shane A. Rosson*, of Triplett Woolf Garretson, LLC, of Wichita, for
appellants.

*Mark A. Werner*, of Law Office of Mark A. Werner, of Pittsburg, for appellee.

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: This case is an example of where a married couple sought and
obtained good counsel in how to preserve their assets and make sure that those assets are
distributed according to their wishes after their deaths. And because they followed their

1

lawyer's advice, they executed an estate plan that the district court followed and thus achieved their aims.

When the district court here refused to impose a life estate on marital property when Mavis Campbell, known as Mickie, died, her adult children from a prior marriage—Kirk and Jill Campbell—appealed. They argue that Corrin G. Kabance, known as Galen, Mickie's surviving husband, owes them fiduciary duties under the prenuptial agreement and contractual wills that Galen and Mickie had executed in 2001.

In their view, the estate plan created a life estate in the property that Galen and Mickie jointly acquired during their marriage, with one-half of the assets passing to them after Galen's death. And, they argue, because Galen possesses only a life estate in the property, he has a fiduciary duty to preserve the property and keep them reasonably informed about the assets, and he may only dispose of any of that property for necessities. Kirk and Jill also contend that the district court abused its discretion when it refused to impose a constructive trust on some real estate that Galen transferred in violation of the contractual will.

After considering the arguments of the parties and examining the record, we find no errors and affirm the district court's rulings.

*This was a second marriage for Galen and Mickie.*

Galen and Mickie married in January 2001. Galen was 65, Mickie was 66. Both were widowed and had children from their prior marriages. Galen had four children. Mickie had two—Jill and Kirk, the plaintiffs in this case.

Before marrying, Galen and Mickie made a prenuptial agreement with help from an attorney. As part of that agreement, Galen and Mickie both agreed that if their

2

marriage ended, neither would claim any right to the other's premarital or individual property. The purpose of the agreement was for each of them to protect their premarital assets for their respective children. When they signed the agreement, Mickie's net worth was $786,100; Galen's was $350,168. The agreement also affirmed that Mickie and Galen intended to pool all of their income for their living expenses and enjoyment.

After that, in October 2001, Galen and Mickie signed substantially similar wills with help from the same attorney who had prepared the prenuptial agreement. Neither party disputes that the wills are contractual and bind Galen and Mickie. Galen's will gives all his nonmarital property to a trust in his name—his children are the beneficiaries of that trust. Mickie's will gives all her nonmarital property to a trust in her name—her children, Kirk and Jill, are the beneficiaries of that trust.

*We focus on one provision of Mickie's will and the events that follow.*

Basically, Article II of Mickie's will is the subject of this appeal. It states that she bequeaths all her marital property to Galen. It then lists the current marital assets (to be updated once per year) and states that assets remaining after her and Galen's deaths will be split between her children and Galen's children. The language is clear:

> "I give and bequeath to my husband, Corrin G. Kabance, my share of all the assets or properties that we have acquired subsequent to our marriage on January 26, 2001. As of this date the assets or properties that we have jointly acquired since January 26, 2001, are as follows, to-wit:
> "(1)    1996 Chrysler Concorde automobile;
> "(2)    Checking account at Commerce Bank, Pittsburg, Kansas;
> "(3)    Savings account at Commerce Bank, Pittsburg, Kansas;
> "(4)    Holstein cattle;
> "(5)    Kitchen table and 4 chairs;
> "(6)    Campbell-Hausfeld air compressor.

As assets or properties are acquired they shall be added, signed and notarized and be made a part of this Will at least once per year on or about January 26.

"Upon the death of both Mavis A. Kabance and Corrin G. Kabance the remainder of the assets or properties in. Article II shall be divided equally between their children, one-half (½) of the remainder will go to the Campbell children, per stirpes, and the remaining one-half (½) to the Kabance children, per stirpes."

While Mickie and Galen did not update their list of assets every year, they did sign lists in 2002, 2003, and 2004, but they failed to update their assets again until 2010. The last time an updated list was signed was 2011. A document purporting to update the assets from 2013 was in their lawyer's file, but it was unsigned.

Then, in August 2015, Mickie died. After her death, Galen made two transfers of funds from trust accounts owned by Mickie into his own account even though he was not a trustee; one was for $8,794.46 and the other was for $435.63. Galen said that he transferred the funds to himself to pay on a line of credit at a bank for which both he and Mickie were liable. Galen also deeded a property that the parties call the "Gladys Place" to his trust account, where his children are beneficiaries. Mickie and Galen had bought that property in 2012, sold a house on it, and retained the farm ground in joint tenancy.

*Kirk and Jill pursue litigation.*

In 2016, Kirk and Jill filed this lawsuit. They brought the claim individually and as cotrustees of the two trusts that Mickie had controlled. They sought declaratory relief, asking the court to determine marital and nonmarital property, to find that the wills were contractually binding, and to find that Galen holds only a life estate in the marital property. They also alleged that Galen had converted funds from Mickie's trust account when he made the two unauthorized transfers to his own account. In his answer, Galen told the court that Kirk and Jill had no right to relief and raised a counterclaim, alleging

4

that Mickie's trusts owed him for crop input costs and various insurance costs. This counterclaim was dismissed later after Galen decided not to pursue it.

After taking testimony on the case, the court took the matter under advisement and issued a comprehensive and meticulous written decision giving its interpretation of the documents. The court found:

- Mickie and Galen intended their premarital property and individual property acquired during the marriage to go to their respective children;

- Mickie and Galen intended that, in the event that either of them died, their jointly acquired property would remain with the survivor;

- Article II of Mickie's will applies to all jointly acquired property, even if that property was not included on one of the signed and notarized updated lists;

- Article II of Mickie's will does not create a life estate in the jointly held property for Galen. There is no evidence that was intended, and it would go against Mickie and Galen's estate planning; and

- because there is no life estate, Kirk and Jill may not require an accounting of or exercise control over the marital property, and there is no need for a constructive trust.

Although the court rejected Kirk and Jill's claims for relief, it granted them judgment on their conversion claim because Galen did not have authority to transfer funds from Mickie's trusts. The court did not find that Galen acted in bad faith when he did so. The court granted judgment to Kirk and Jill for $9,230.09, plus statutory interest. Galen satisfied that judgment in February 2020. Kirk and Jill bring the matter to us.

They make three arguments in this appeal. First, they argue that Galen owes them certain fiduciary duties under the contractual will because he retains only a life estate in the marital property. Then, they argue that they are entitled to information about Galen's use of the marital assets because he has tried to undermine the purpose of the contract.

5

Finally, they argue that the district court erred when it refused to impose a constructive trust on the "Gladys Place"—the property Galen had transferred to himself. We will address the issues in that order.

*The rules that guide our decision are well settled.*

The construction of a written instrument, including a will, presents a question of law when the document, analyzed in its entirety, contains no pertinent ambiguity. *In re Estate of Cline*, 258 Kan. 196, 199, 898 P.2d 643 (1995). If a survey of the will's language makes the testator's intent clear, the document is unambiguous and should be enforced consistent with that intent. *In re Estate of Haneberg*, 270 Kan. 365, 371, 14 P.3d 1088 (2000). This court need not look to rules of construction or outside evidence in that case. 270 Kan. at 371. Ultimately, "the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible[.]" 270 Kan. at 372.

In Mickie's will, all of her considerable premarital property passes to a trust where her children are the beneficiaries. It gives to Galen "[Mickie's] share of *all* the assets or properties that [they] have acquired subsequent to [their] marriage on January 26, 2001." (Emphasis added.) And it leaves any remainder of those assets to be split one-half between Galen's and Mickie's children when both she and Galen have died. It does not explicitly restrict Galen's use or transfer of the marital property.

Kirk and Jill contend that two Kansas Supreme Court decisions that have recognized contractual duties based on language much like that in Mickie's will are controlling. See *Estate of Draper v. Bank of America*, 288 Kan. 510, 523-29, 205 P.3d 698 (2009); *In re Estate of Jones*, 189 Kan. 34, 366 P.2d 792 (1961). We review both.

6

In *Estate of Jones*, a husband and wife both had children from prior marriages. Under their jointly executed will, if one of the spouses died, all of that property passed to the surviving spouse "'absolutely and without reservation.'" After the death of the surviving spouse, "'all property thus possessed'" was to be split evenly among their children from the prior marriages. 189 Kan. at 34. In a probate proceeding after the husband's death, the court determined that the wife took the property in fee simple, so she could dispose of it in any lawful way. The Supreme Court overturned that decision, holding that it was the husband's and wife's intent to leave a life estate to the surviving spouse, so the wife could dispose of the property only for necessities. 189 Kan. at 39. Thus, Kirk and Jill argue that since the language in *Jones* was very similar to the language in Mickie's will, the court should have found that it created a life estate.

Then, in *Estate of Draper*, a husband and wife entered into a prenuptial agreement that required the wife to execute and maintain a will leaving not less than one-fourth of her estate to each of her husband's three sons from an earlier marriage. When her husband died, the wife received a substantial portion of his estate. The wife then transferred most of her assets to two trusts and executed a will splitting the rest of her estate between her husband's three sons. When the wife died, her estate was less than $10,000, but the assets in the trusts—the beneficiaries of which were religious and medical institutions—exceeded $1 million.

The Supreme Court rejected the holding of a panel of this court that the will failed to create a life estate because it was not done explicitly, noting that several appellate cases had recognized that "the expression of a desire to direct the devise of the remainder of one's property is an expression of intent that there be a remainder." 288 Kan. at 525. Without deciding whether the will created a life estate, the Supreme Court found that the wife had breached the duty of good faith and fair dealing because she thwarted the intention of the contract by effectively disinheriting her husband's sons. 288 Kan. at 525-26, 528-29.

We find those cases instructive, but not controlling. We note that disputes involving a life estate "turn upon [their] own particular facts and no general rules can be formulated which will apply in all factual circumstances." *In re Estate of Kreie*, 235 Kan. 143, 151, 679 P.2d 712 (1984).

Some of the language of the wills in *Jones* and *Draper* is similar, but there is a crucial factual difference. Unlike in *Jones and Draper*, Galen did not receive all or most of Mickie's property. In *Jones* and *Draper*, the surviving spouse could—and in *Draper* did, effectively disinherit the deceased spouse's children. The surviving spouse disposed of all of the property before it could pass to the children. That did not occur here.

Here, the district court found that Mickie and Galen had protected Mickie's assets for her children by devising the entirety of her considerable premarital and individual property to a trust in which her own children were the soul beneficiaries. As Kirk and Jill acknowledge, that was the very reason for executing a prenuptial agreement. By following their lawyer's advice, Mickie and Galen created an estate plan that would carry out their wishes.

Thus, the facts here do not support Kirk and Jill's contention that Mickie and Galen intended to create a life estate of the marital property in the survivor. Under Kirk and Jill's theory, Galen could spend the marital assets *only* on necessities; those marital assets are otherwise unavailable to him. But that makes little sense—having already protected their children's inheritance in the prenuptial agreement and wills, why would Galen and Mickie intend the survivor to preserve the marital assets they might acquire during their late-in-life marriage?

As the district court found, there is no evidence—in the language of the wills or otherwise—suggesting that Mickie and Galen intended to create a life estate in the marital property. Since the primary function of this court is to determine the testator's

8

intent, we hold that it was not Mickie's intent that Galen receive only a life estate in the disputed property.

We do not suggest that Galen does not owe *any* contractual duties under the will. As *Draper* recognized, the duty of good faith and fair dealing is implicit in agreements to devise property a certain way. Under this duty, the surviving spouse may not thwart the intention of the contract. 288 Kan. at 525. But since the intention of the will was not to create a life estate in the marital property for the survivor, Galen would not thwart the intention of their contract by using the property how he sees fit.

*Kirk and Jill are not entitled to a continuing accounting from Galen.*

In our view, since Galen is not a life tenant of the marital property, he need not give Kirk and Jill information about his use of it. Even when a person *does* hold a life estate, the general rule is that "a life tenant who has the power to dispose of or consume the corpus will not be required to give security for the protection of the remainderman" with no showing of bad faith, a danger of loss, or waste. *In re Estate of Lehner*, 219 Kan. 100, 107, 547 P.2d 365 (1976).

Even though Kirk and Jill allege bad faith here because of Galen's unauthorized transfer of funds from Mickie's trust after her death, the district court put that claim to rest. After hearing Galen's testimony that the payments were inadvertent, the court did not find that Galen acted in bad faith, and Galen has repaid the funds. We see no error in the district court's ruling on this point. There is no reason to require an accounting of the property, as Jill and Kirk request. We move to the final issue.

9

*The court's refusal to impose a constructive trust is not an abuse of discretion.*

The imposition of a constructive trust is an equitable remedy. *Nelson v. Nelson*, 288 Kan. 570, 579, 205 P.3d 715 (2009). When a court weighs the equities under the circumstances, it decides what is fair and equitable. This is an exercise of judicial discretion. As a result, we review a district court's refusal to apply an equitable remedy for an abuse of discretion. A district court abuses its discretion if its action stems from an error or law or fact or is otherwise arbitrary or unreasonable. *In re Partnership of PB&R*, 52 Kan. App. 2d 871, 874-75, 380 P.3d 234 (2016).

Kirk and Jill argue that the district court abused its discretion because it arbitrarily "completely misunderstood Kirk and Jill's position when [the judge] issued his ruling nearly eight months after trial and immediately before retiring." Kirk and Jill do not explain why the timing of the judge's retirement or the time he took to reach a decision are relevant. But their argument was that they held an interest in the "Gladys Place" and that Galen transferred the property to his trust without regard to their interests.

For the first time on appeal, they frame this as an issue of unjust enrichment. They argue in a supplemental brief that while they may not have named the claim as unjust enrichment in the district court, they argued for the return of the property. That is not equivalent. Simply put, they never raised the elements of an unjust enrichment claim in the district court. So the district court never considered arguments about whether the elements of unjust enrichment were proved. For this failure to raise the claim, as much as their claim relies on unjust enrichment, we hold that Kirk and Jill have abandoned that argument on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011).

Turning to their argument on this point, we remain unpersuaded by Kirk and Jill. Nothing in the record suggests that the district court arbitrarily denied their request to

impose a constructive trust because it misunderstood their position. They raised the issue in their trial brief and proposed findings of fact and conclusions of law. Galen argued against imposing a constructive trust in his trial brief and proposed findings of fact and conclusions of law. The district court considered these arguments, heard testimony, and reviewed documentary evidence. It then decided that since there is no life estate in the jointly held property, it would not impose a constructive trust. It is clear to us that the district court exercised discretion and it did not abuse its discretion.

Mickie and Galen agreed on how their property was to be distributed after their deaths. The antenuptial agreement along with their two wills and the trusts they created depict an estate plan that would satisfy their intentions. The district court here scrupulously followed their plan. We find no errors, nor do we see any abuse of discretion.

Affirmed.